**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| YAHAIRA MACA SALGADO, | : | Case No. 3:23-cv-1233-SFR |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| vs. | : | |
| | : | |
| UNITED STATES LIABILITY INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| *Defendant*. | : | |
| | : | FEBRUARY 10, 2025 |

**OMNIBUS MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Yahaira Maca Salgado respectfully submits this memorandum in opposition to defendant United States Liability Insurance Company's motion for summary judgment. *See* Dkt. # 46. Because the defendant breached its duty to defend, the defendant's motion should be denied, and the plaintiff's accompanying cross-motion for summary judgment should be granted.

**Preliminary Statement**

This insurance company abandoned its insured, and failed even to provide any defense, on a purported exclusion that was – at a minimum – ambiguous. Multiple reasonable definitions of the term "firearm" would <u>not</u> apply to the antique device at issue in this case. *See* Argument, section I-A. Several dictionaries and the United States Code sensibly define the term to reach (1) devices that shoot projectiles, unlike the device at issue here, and/or (2) antique muskets. *See id.*, section I-A-1. The fact that other reasonable definitions would not apply to exclude coverage under the allegations set forth in the underlying complaint confirms that the defendant owed a duty to defend its insured. This inherent ambiguity was confirmed by the defendant's own corporate representative, who verified that the insurance company does not maintain, and did not apply, any

uniform or consistent definition of that term. *See id.*, section I-B. A similar uncertainty exists as to the term "battery," since its definition plainly requires physical contact between two people, which is very far afield from the allegations in the underlying complaint. *See id.*, section II. Because the insurance company failed to defend its insured despite the absence of any clear exclusion, the defendant is responsible for the resulting judgment against its insured.

### FACTUAL BACKGROUND

Rodrigo Rodriguez planned a "Cinco de Mayo" celebration to take place in Willimantic on May 4, 2019. As he had done in previous years for this annual celebration of Mexican culture, Mr. Rodriguez purchased an insurance policy from the defendant. He paid all premiums, with the policy fully and indisputably in effect for the period of May 4 through May 6, 2019. *See* Dkt. # 47, ¶ 1.

While attending the Cinco de Mayo celebration, a 17-year-old girl named Yahaira Maca Salgado was severely injured and suffered permanent injuries. *See* Dkt. # 48-2. She thereafter brought suit against Mr. Rodriguez and other defendants in the Superior Court. *See id.* Her Complaint alleged that she had been injured after one of the participants had discharged an antique musket that used powder, but did not use ammunition or bullets of any kind. *See id.*, ¶¶ 9-12. Despite having issued insurance policies for previous iterations of this Cinco de Mayo event, and knowing full well at the time it issued this policy that the participants used such antique devices as part of the celebration, *see* Argument, section I-B, the defendant insurance company refused even to defend the suit. *See* Dkt. # 47, ¶¶ 25-26. The case proceeded to trial, whereupon the Court (Fisher, J.) heard evidence and rendered a total damages award of $1,582,131.35. *See* Dkt. # 48-6. Judgment in that amount entered in favor of the plaintiff on June 6, 2022. *Id.*

In accordance with Section 38a-321 of the Connecticut General Statutes, which "places the

plaintiff in the shoes of the insured, subject to all the same rights and protections as the insured," *see*

*Nash Street, LLC v. Main Street America Assurance Co.*, 337 Conn. 1, 8 (2020) ("*Nash Street*"),

the plaintiff filed the instant suit against the judgment debtor's insurance company, seeking to

recover the judgment owed from the delinquent insurer. *See* Dkt. 1-1. As discussed further below,

because the defendant breached its duty to defend its insured, the insurance company is liable to

satisfy the judgment owed by the plaintiff.

## ARGUMENT

When an insurance company fails even to defend its insured, a plaintiff holding a judgment

against the insured can recover directly from the insurance company. *See* Conn. Gen. Stat. § 38a-

321. The analysis "turns only on whether there was a possibility of coverage that triggered the

insurer's duty to defend." *See Nash Street*, 337 Conn. at 9.[1] If an insurer has breached that duty,

it is liable for the underlying judgment, *see R.T. Vanderbilt Co. v. Continental Casualty Co.*, 273

Conn. 448, 470–71 (2005), as well as any interest, *see Black v. Goodwin*, Loomis & Britton, Inc.,

239 Conn. 144, 164–66 (1996).[2]

The insurance company's duty to defend is "broader than [its] duty to indemnify." *Nash*

*Street*, 337 Conn. at 9. Imposing an exceedingly low bar, the duty to defend is "triggered if at least

one allegation of the complaint falls even possibly within coverage" or "potentially could fall

within the scope of coverage." *See Travelers Casualty & Surety Co. of America v. Netherlands*

*Ins. Co.*, 312 Conn. 714, 739 (2014); *see also Ryan v. Nat'l Union Fire Ins. Co. of Pittsburgh PA*,

692 F.3d 162, 167 (2d Cir. 2012) (instructing that courts will "construe[] broad policy language in

---

[1] Unless otherwise indicated, all emphases in materials quoted herein have been added.

[2] The defendant agrees that Connecticut law applies, *see* Dkt. # 46, pp. 9-10, and has never contested the reasonableness of the Superior Court's damages award.

favor of imposing a duty to defend on the insurer . . . and require[] a defense if an allegation of the complaint falls even possibly within the coverage") (emphasis in original).  Unlike a declaratory judgment action that asks a court to ascertain the meaning of a policy provision or the parameters of an indemnity obligation, a court reviewing a delinquent insurance company's refusal to defend simply considers whether there was even a "possibility of coverage." *See Nash Street*, 337 Conn. at 8-10.  The refusal to defend is excusable only if "there was clearly no potential for coverage" whatsoever.  *See id.* at 17 (internal citation omitted).  If there is any possibility or potential for coverage, the breach of the duty to defend requires the insurer to pay the underlying judgment. *See id.* at 8-10; *see also Missionaries of the Co. of Mary, Inc. v. Aetna Casualty & Surety Co.*, 155 Conn. 104, 113 (1967) (instructing that breach of duty to defend is dispositive, such that it is "unnecessary to reach [the] issue" of indemnity).

In determining whether there is a possibility for coverage, any ambiguity or doubt is construed in favor of coverage.  "[A]ny uncertainty as to whether an alleged injury is covered works in favor of providing a defense to an insured[.]"  *Nash Street*, 337 Conn. at 10; *see also Ryan*, 692 F.3d at 169–70 (recognizing "a preference under Connecticut law for an insurer to provide a defense for claims that are even potentially covered by the relevant policy, under a reservation of rights"); *High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 96 (2d Cir. 2018) ("Connecticut law . . . takes a liberal position with regards to an insurer's duty to defend").  Uncertainty may arise in two distinct ways.  "Factual uncertainty" exists if it is at all "unclear from the face of the [underlying] complaint whether an alleged injury occurred in a manner that is covered by the policy."  *See Nash Street*, 337 Conn. at 10 (citing *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 620-22 (2d Cir. 2001)).  In turn, "[l]egal uncertainty arises when it is unclear how a court might interpret the policy language at issue."  *Id.*  Legal uncertainty surfaces in multiple

4

forms, including "ambiguous policy language," which will give rise to a duty to defend. *See id.* at 11; *see also Wentland v. Am. Equity Ins. Co.*, 267 Conn. 592, 601 (2004) (instructing that "any ambiguity is resolved in favor of the insured," and holding that, where "language [in an exclusion] was not unambiguously applicable to the pleadings of the injured parties in their underlying complaints, . . . the duty to defend was triggered"). Such uncertainty also may exist if the case law does not exclude coverage, either because of a "split of authority in other jurisdictions" or the absence of "appellate authority in the relevant jurisdiction . . . opin[ing] on the matter." *See Nash Street*, 337 Conn. at 11 (citing cases).

Put simply, any ambiguity or uncertainty – in the language of the policy, how a court might interpret that language, or the facts presented – triggers the duty to defend. If an insurance company is not able to "show that its interpretation of [a] policy exclusion was [the] 'only reasonable interpretation,'" *see id.* (citing and quoting *Blackhawk-Central City Sanitation District v. American Guarantee & Liability Ins. Co.*, 214 F.3d 1183, 1193 (10th Cir. 2000)), or if "the application of an exclusion involves a fairly debatable question of law," *see id.* (quoting *Monarch Greenback, LLC v. Monticello Ins. Co.*, 118 F. Supp. 2d 1068, 1078 (D. Idaho 1999)), or if the "coverage dispute could not be resolved short of an interpretation akin to that which would occur in a declaratory judgment action," *see id.* at 12 (quoting *Soto v. Country Mutual Ins. Co.*, Docket No. 2-14-1166, 2015 WL 5307297, *10 (Ill. App. Sept. 9, 2015), *appeal denied*, 48 N.E.3d 677 (Ill. 2016)), then the uncertainty compels a defense.

Because the provisions at issue in this case are policy exclusions, the defendant not only bears the burden of proving the applicability of any such coverage exclusion, *see McCants v. State Farm Fire & Cas. Co.*, 157 Conn. App. 509, 515 (2015), but also must overcome a rigorous application of *contra proferentem*, whereby "any ambiguity in the terms of an insurance policy must

be construed <u>in favor of the insured</u> because the insurance company drafted the policy." *Enviro Express, Inc. v. AIU Ins. Co.*, 279 Conn. 194, 199 (2006) (internal quotations omitted). In the context of the duty to defend, that inquiry "is <u>not</u> whether [the] exclusions . . . <u>actually</u> preclude coverage; nor does this case require [this Court] to determine conclusively what those exclusions mean." *Nash Street*, 337 Conn. at 16 (second emphasis in original). Instead, "[t]he only question . . . is whether there was any <u>possibility</u> of coverage at the time [the insured] tendered defense to the defendant." *Id.* (emphasis in original). Given the multiple reasonable definitions of the term "firearms" that would not reach the antique device at issue in this case, *see* section I, and the ambiguity inherent in the battery definition as applied to the unique facts of this case, *see* section II, such uncertainty mandated a duty to defend. That reality precludes the defendant's motion, and instead warrants summary judgment in favor of the plaintiff.

## I.    BECAUSE THE UNDEFINED AND AMBIGUOUS FIREARMS EXCLUSION PROVIDED FOR THE POSSIBILITY OF COVERAGE, THE DEFENDANT OWED A DUTY TO DEFEND ITS INSURED.

By relying solely on exclusionary language, the defendant must demonstrate that there is only one reasonable construction of the operative term or provision. The insurance company cannot possibly carry that heavy burden in this case. "Connecticut law favors a narrow construction of exclusions and requires that ambiguous provisions be construed in favor of the insured[.]" *Nash Street*, 337 Conn. at 26. A word or phrase is "ambiguous" if it is "reasonably susceptible to more than one reading." *See Connecticut Ins. Guar. Ass'n v. Fontaine*, 278 Conn. 779, 786–87 (2006) (internal quotation marks omitted). If there exist "two equally reasonable interpretations" of an exclusion, the one that will "sustain the claim and cover the loss must, in preference, be adopted." *See Allstate Ins. Co. v. Barron*, 269 Conn. 394, 406 (2004).

6

**A.      Multiple Reasonable Definitions of "Firearm" Do Not Apply to the Device Identified in the Underlying Complaint.**

With respect to the so-called "Firearms Exclusion," the key term – "firearms" – is not defined. As such, "[t]o ascertain the commonly approved usage of a word, it is appropriate to look to the dictionary definition of the term." *See Buell Indus., Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 539 (2002) (internal citation omitted). But there are multiple reasonable dictionary and other definitions of the term "firearm(s)" that would <u>not</u> reach the antique musket that is at issue in this case.

**1.      *Dictionary Definitions and Federal Law Define "Firearm" as a Weapon That Expels a Projectile.***

One reasonable definition of a "firearm" is a device that shoots not just gunpowder, but an actual <u>projectile</u>. While the defendant relies on a dictionary definition of the term as "a weapon from which a shot is discharged by gunpowder," *see* Dkt. # 46, p. 14, other dictionary definitions describe firearms as devices that shoot bullets or other ammunition. For example, the American Heritage Dictionary defines "firearm" as "[a] weapon, especially a pistol or rifle, <u>capable of firing a projectile</u> and using an explosive charge as a propellant."[3] A similar dictionary definition refers to "a small arms arm weapon, as a rifle or pistol, <u>from which a projectile is fired</u> by gunpowder."[4] Even one of the definitions offered by the defendant requires a "weapon from which <u>a missile can be propelled at speed</u> by means of an explosive charge[.]" *See* Dkt. # 46, p. 14 (quoting Oxford English Dictionary). These definitions sensibly consider "firearms" to be weapons that shoot projectiles – *i.e.*, bullets or ammunition.

---

[3] *See* American Heritage Dictionary, online available https://ahdictionary.com/word/search.html?q=firearm (last visited 9 Feb. 2025).

[4] *See* Random House Unabridged Dictionary, online available https://www.dictionary.com/browse/firearm (last visited 9 Feb. 2025).

In addition to multiple dictionaries, federal law also defines a "firearm" in similar fashion. Although the defendant addresses the fact that the United States Code does not include antiques within the definition, *see* Dkt. # 46, pp. 13-16, the insurance company blatantly ignores the actual definition of the term. Under the federal statutory definition, "firearm" means "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive[.]" *See* 18 U.S.C. § 921(a)(3). Despite contending that the definition Congress chose for the operative term is somehow "irrelevant" to determining whether there are multiple reasonable definitions of the word, *see* Dkt. # 46, p. 15, the defendant does not cite any decisional authority that would reject a federal statutory definition. Quite the contrary, other insurance policies have elected to define the term "firearms" by expressly incorporating that very definition. *See Nautilus Ins. Co. v. Action ATM, Inc.*, No. 3:16-CV-0295-GCS, 2019 WL 6918502, at *1-*2 (S.D. Ill. Dec. 19, 2019) (applying policy exclusion that defined "firearms as defined in the Gun Control Act, 18 USC [sic] § 921(a)(3)" in case where injured party "was fatally struck by a bullet").

The fact that numerous definitions of "firearm" require the device to expel a projectile or bullet necessarily renders the Firearms Exclusion ambiguous in the circumstances set forth in the underlying complaint. The duty to defend is evaluated on the allegations set forth in that complaint, such that the duty is triggered even if there are "facts outside the four corners of [the complaint that] indicate that the claim may be meritless or not covered." *See Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 805 (2013). In this case, the plaintiff's allegations against the insured in the Superior Court made clear that the device at issue was a "muzzle-loading black powder antique firearm" that used "black powder," but was "not designed to use, and did not use, fixed ammunition." *See* Dkt. # 48-2, ¶¶ 9-11. The plaintiff did not allege that she was injured by any bullet, ammunition, or other projectile. *See id.*, ¶¶ 12-14. Although the device identified in the underlying complaint may

have satisfied one of the dictionary definitions mentioned in the defendant's brief, *see* Dkt. # 46, p. 14, the fact that the device was incapable of shooting any ammunition or projectile means it did not satisfy any of the three dictionary definitions set forth above, and did not come within the definition used by Congress.

That reality presents an obvious and unavoidable ambiguity. Even just one reasonable definition beyond the one proffered by the defendant will suffice to show ambiguity. *See, e.g.*, *Fontaine*, 278 Conn. at 786–87; *Barron*, 269 Conn. at 406. Because the term was not defined within the exclusion, and the underlying complaint made clear that this device did not and could not shoot a projectile, there was – at a minimum – very substantial doubt about whether the exclusion would apply. *See, e.g.*, *Heyse v. Case*, 114 Conn. App. 640, 650 (2009) ("[A]n ambiguity in an insurance policy must be construed against the insurer" and in favor of coverage). Since "ambiguous policy language can give rise to the duty to defend," *see Nash Street*, 337 Conn. at 11, the insurance company was required to defend its insured. *See id.* at 16 (explaining that inquiry is "not whether [an] exclusion[] . . . actually preclude[s] coverage . . . [but] whether there was any possibility of coverage") (emphasis in original).

It is telling that the defendant cannot identify a single judicial decision that extends a firearms exclusion to an antique musket or other device that is incapable of shooting a projectile. Despite exhaustive research, undersigned counsel is not aware of any case law that has applied such an exclusion where, as here, the device is incapable of shooting any ammunition. To the contrary, such exclusions are applied when someone is shot by a "bullet." *See, e.g.*, *Nautilus Ins. Co.*, 2019 WL 6918502, at *1; *AIX Specialty Ins. Co. v. Everett*, 543 F. Supp. 3d 1321, 1324 (M.D. Fla. 2021). That result is perfectly sensible, since a gun that shoots bullets comes well within every one of the definitions of "firearm" that have been presented. But a device that is incapable of expelling a

9

projectile is not a "firearm" as defined by several dictionaries and the United States Code.  Although this textbook ambiguity would have been sufficient to prevail on the defendant's duty to indemnify in a declaratory judgment action, it was more than enough to compel at least a defense of the insureds in Superior Court.  The defendant's breach of that duty leaves the insurance company responsible for the plaintiff's judgment.

### 2.    *Another Reasonable Definition of "Firearm" Does Not Reach Antiques.*

Although the above-described ambiguity emanating from the definitions that require a firearm to be able to shoot a projectile is sufficient to trigger the duty to defend, *see* section I-A-1, there is yet another reasonable definition that does not include an antique device.  This Court need look no further than the United States Code, which expressly excludes "antique firearm[s]" from the definition of "firearm."  *See* 18 U.S.C. § 921(a)(3).  An "antique firearm" is, in turn, defined to include "any muzzle loading rifle . . . which is designed to use black powder, . . . and which cannot use fixed ammunition[.]" *See* 18 U.S.C. § 921(a)(16)(C).  That is <u>exactly</u> the type of device that caused the plaintiff's injury. *See* Dkt. # 48-2, ¶¶ 9-11 (averring that antique device "was not designed to use, and did not use, fixed ammunition").

Without citation to any case law, the defendant tries to dismiss the definition adopted by Congress as an "inconsequential" regulatory decision.  *See* Dkt. # 46, pp. 15-16.  But the defendant does not claim that Congress's definition of a "firearm" is unreasonable.  Nor could the insurance company take such an untenable position.  It is entirely logical to consider that the phrase "firearms" would reach revolvers, pistols, and other modern guns, but not relics of the distant past that cannot shoot any solid objects.  When the exclusion is evaluated from the perspective of a "reasonable layperson," *Ceci v. National Indemnity Co.*, 225 Conn. 165, 168 (1993), it is entirely rational to believe that such an exclusion would apply to modern devices that one considers a "firearm," but not

the type of antiques that may be seen in a museum, or may be featured in parades or cultural celebrations related to Cinco de Mayo, the Revolutionary War, or other historical exhibitions and reenactments.

In fact, the language of the Firearms Exclusion is consistent with the belief that its scope would not cover antiques or artifacts.  The text refers to "[f]irearms, including handguns, revolvers, pistols, rifles, shotguns, air guns, semiautomatic weapons and similar devices[.]"  *See* Dkt. # 48-1 (Policy), p. 52.  A well-established rule of construction known as *noscitur a sociis* – which means "[as] known by its associates," *State v. Agron*, 323 Conn. 629, 635 n.3 (2016) – serves as an "interpretive aid" instructing that "the meaning of a . . . word may be indicated, controlled or made clear by the words with which it is associated[.]"  *Id.* at 635–36; *see also State v. LaFleur*, 307 Conn. 115, 133 (2012); *McCoy v. Comm'r of Pub. Safety*, 300 Conn. 144, 159 (2011); *Staples v. Palten*, 214 Conn. 195, 199–200 (1990) (describing principle as "acknowledg[ing] that general and specific words are associated with and take color from each other, restricting general words to a sense . . . less general.").  By associating with "firearms" those devices such as "handguns" and "shotguns" and "semiautomatic weapons," *see* Dkt. # 48-1, p. 52, the exclusion necessarily made plain that the operative phrase would be "indicated, controlled [and] made clear" by these examples.  *See Agron*, 323 Conn. at 635–36.  In other words, the full provision indicates that the exclusion was intended to reach guns capable of shooting projectiles, but not historical artifacts or other such devices.  This construction is entirely consistent with a lay policyholder's belief, and the definition adopted by Congress, that such antiques are not the type of weapons that are covered by this exclusion.

Notably, although the duty to defend analysis should be restricted to the four corners of the underlying complaint, the defendant knew full well before it issued this Policy that the Cinco de Mayo

11

celebration featured these types of antique muskets.[5]   The underwriting file confirms that, in evaluating and issuing policies for celebrations in previous years, the insurance company had photographic proof that these types of devices would be present.  *See* Photograph from Underwriting File, attached hereto as Exhibit A; *see also* Rule 30(b)(6) Deposition of Lisa Flowers ("Flowers Depo."), attached hereto as Exhibit B, pp. 76-78 (acknowledging that items in picture do not appear to be firearms); Rule 30(b)(6) Deposition of Cortney Bard ("Bard Depo."), attached hereto as Exhibit C, pp. 64-65 (defendant cannot say that photograph was considered before denying coverage, and acknowledging that "[t]he underwriting file did not make a difference on whether there was coverage").  A reasonable policyholder, who has previously purchased this same coverage, and knows that the insurance company has received a brochure showing these types of ceremonial muskets, would be well within his or her rights to expect that the Firearms Exclusion did not apply to such antiques.  Otherwise, the exclusion would frustrate the entire purpose of the insurance contract. Connecticut law does not interpret an exclusion in a manner that will render coverage illusory, *see Karas v. Liberty Ins. Corp.*, 335 Conn. 62, 108 (2019), or otherwise accomplish an absurd result, *see Welch v. Stonybrook Gardens Co-op., Inc.*, 158 Conn. App. 185, 198 (2015).

Simply put, there are multiple reasonable definitions of the term "firearms" that would not apply to a device that (1) is incapable of shooting any projectile or bullet, and/or (2) is an "antique." Because those elements were clearly implicated by the underlying complaint, the defendant owed a duty to defend.  *See Nash Street*, 337 Conn. at 10 (explaining that "any uncertainty as to whether an

---

[5]  Because "[a]n insurer may be obligated to provide a defense not only based on the face of the complaint but also if any facts known to the insurer suggest that the claim falls within the scope of coverage," Connecticut law "require[s] the insurer to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage."  *Hartford Casualty Ins. Co. v. Litchfield Mutual Fire Ins. Co.*, 274 Conn. 457, 466–67 (2005) (citations and internal quotation marks omitted).

alleged injury is covered works in favor of providing a defense to an insured," including with respect to "ambiguous policy language"); *id.* at 26 ("ambiguous provisions [must] be construed in favor of the insured"). By failing even to provide a defense to its insured in the midst of such ambiguity, the defendant's conduct leaves it responsible for the resulting judgment.

**B.    The Defendant's Witnesses Confirm the Ambiguity Inherent in the Undefined Reference to "Firearms."**

Given the multitude of reasonable definitions of the operative term, *see* section I-A, it is little surprise that the defendant's own witnesses conceded that there is not one universal definition of "firearms." In sworn testimony taken pursuant to Rule 30(b)(6), the company's corporate representatives admitted that the insurance company "does not have a specific meaning for firearms," as used in this exclusion, but instead applies the phrase on "I guess, a case-by-case basis on whether something is a firearm." Bard Depo., Ex. C, p. 70. The decision to affix the "firearm" label would necessarily "depend[] on the object." *See id*, pp. 70-71. The claims examiner who rejected coverage admitted that "everyone can have a different opinion" about whether the term may apply. *See id.* Corporate testimony further confirmed that the label or description applied to an object is not determinative, in that not every item described as a "gun" would qualify as an actual "firearm." *See id.*, p. 75 ("I would not consider a water gun a firearm."); *id.*, pp. 79-80 (acknowledging that exclusion should apply to what the item is, not necessarily what it has been called). Nonetheless, the insurance company simply rejected coverage out of hand, without conducting any actual investigation. *See also id.*, p. 144 ("investigation" took just one day); *id.*, p. 149 (insurer conducted no further inquiry after receiving the complaint). Denying coverage on an undefined term clearly capable of multiple different definitions, without undertaking even a basic investigation, and admittedly failing to follow Connecticut law governing the duty to defend, *see id.*, p. 52, is an appalling tactic that cannot be

countenanced.[6]

By acknowledging that the examiner who denied coverage applied her own personal understanding of the phrase, and that she was unable to say that this idiosyncratic and undocumented definition was a "uniform or consistent" one, *see id.* at 85-86, the defendant's witnesses implicitly conceded the obvious – namely, that the undefined phrase "firearms" is ambiguous.[7]

**C.      The Defendant's Cursory Reference to "Fireworks" Does Not Excuse Its Breach of Its Duty to Defend.**

With a mere paragraph, the defendant vaguely suggests that another aspect of the Firearms Exclusion would somehow vitiate coverage. *See* Dkt. # 46, p. 12. As an initial matter, by devoting just five sentences to the topic, the defendant failed to brief it adequately, which precludes review. *See, e.g.*, *Bracho v. Kent Sch.*, No. 3:18-CV-0021 (MPS), 2022 WL 198679, at *14 (D. Conn. Jan. 21, 2022) (declining to consider inadequately briefed argument); *Kurowski v. City of Bridgeport*, No. CIV. B-85-96 (TFGD), 1988 WL 25417, at *6 (D. Conn. March 14, 1988) (finding argument abandoned where "defendants devote[d] only two pages of their brief to" the issue), *aff'd*, 880 F.2d 1319 (2d Cir. 1989). This Court need not do the work that the insurance company declined to do.

But even if the merits are to be considered, it is apparent why the defendant had so little to

---

[6] When asked whether the insurance company evaluated coverage in this case with "the understanding that the duty to defend is triggered if at least one allegation of the Complaint falls even possibly within coverage," the claims examiner who denied this claim responded: "No." *Id.*, p. 52. She later stated that she "was not told specifically in Connecticut that if one allegation is covered, that we have to defend the whole lawsuit." *Id.*, p. 53. As set forth above, such claims practices plainly violate the law.

[7] Another witness, who was also testifying on behalf of the insurance company pursuant to Rule 30(b)(6), offered yet another definition of a "firearm" by expressing the belief that the term would apply to "things that have the potential to possibly replicate what may have been or could potentially be used in a situation that is not safe." *See* Flowers Depo., Ex. B, pp. 79-80. Although that definition would extend so far as to invite absurd results, the fact that each person offers a different conception of this undefined term leaves no doubt that the phrase is capable of multiple meanings.

14

say.  The plain meaning of the term "fireworks" does not apply to the antique musket at issue in this case.  Although also undefined in the defendant's policy, dictionary definitions of the term reinforce that a "firework" is "[a] device consisting of a combination of explosives and combustibles, set off to generate colored lights, smoke, and noise for amusement,"[8] or, similarly, "a combustible or explosive device for producing a striking display of light or a loud noise, used for signaling or as part of a celebration."[9]  Other definitions confirm that a "firework" is one that is ignited for a specific purpose, namely "to produce spectacular sparking effects and explosions."[10]  These well-accepted definitions are entirely inapplicable to the device in this case.  At a minimum, it cannot be said that the antique musket falls within a commonly accepted definition of a term that usually applies to a colorful light show that takes place high in the sky during summer holidays.

Notably, the defendant does not claim that the antique device in this case was a "firework," but rather relies exclusively on the general phrase at the concluding portion of this provision.  *See* Dkt. # 46, p. 12.  In full, the provision reads: "Fireworks, including Roman Candles, pinwheels[,] skyrockets, ground displays, flares, smoke bombs and similar devices that produce, when ignited or activated, sound, smoke, motion or a combination of these[.]"  Dkt. # 48-1 (Policy), p. 52.  The

---

[8]  *See* American Heritage Dictionary, online available https://ahdictionary.com/word/search. html?q=fireworks (last visited 9 Feb. 2025).

[9]  *See* Random House Unabridged Dictionary, online available https://www.dictionary.com/ browse/firework (last visited 9 Feb. 2025).

[10]  *See* Oxford English Dictionary, online available https://www.oed.com/search/dictionary/ ?scope=Entries&q=firework (last visited 9 Feb. 2025).  *See also* Merriam-Webster's Unabridged Dictionary, online available https://www.merriam-webster.com/dictionary/firework (defining "firework" as "a device for producing a striking display by the combustion of explosive or flammable compositions") (last visited 9 Feb. 2025); Cambridge Dictionary, online available https://dictionary.cambridge.org/us/dictionary/english/firework (defining term as "a small container filled with explosive chemicals that produce bright colored patterns or loud noises when they explode") (last visited 9 Feb. 2025).

insurance company does not claim that the antique device was a "[f]irework[,]" "Roman Candle[,]" "skyrocket[,]" or "smoke bomb[,]" nor would there be any plausible basis to make any such argument. Instead, the defendant improperly tries to use the concluding phrase – directed to "similar devices" that produce sound, smoke, and motion when ignited, *see id.* – in an effort to throw open this exclusion and reach an object that is plainly outside the scope.

The defendant's approach plainly violates the rules of construction. As discussed above, *see* section I-A, the meaning of "fireworks" is necessarily "indicated, controlled [and] made clear by the words with which it is associated[.]" *See Agron*, 323 Conn. at 635–36 (applying *noscitur a sociis*). The language of this exclusion necessarily indicates that a "firework" is a device akin to a "Roman Candle[]" or "skyrocket[]" – neither of which have any remote association with a ceremonial antique musket that is used in a historical reenactment or cultural parade. Similarly, the related principle *ejusdem generis*, meaning "of the same kind," *see CSX Transp., Inc. v. Alabama Dep't of Revenue*, 562 U.S. 277, 295 (2011), precludes the defendant from relying on just the concluding general phrase. Courts apply *ejusdem generis* in circumstances where "a general term follows a specific one, [such that] the general term should be understood as a reference to subjects akin to the one with specific enumeration." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223 (2008). In this case, where an exclusion includes a general reference at the end of a non-exhaustive list of a specific class of words, this principle rightly interprets that general reference in line with the prior list of examples. *See 24 Leggett St. Ltd. P'ship v. Beacon Indus., Inc.*, 239 Conn. 284, 297 (1996) ("When people list a number of particulars and add a general reference like 'and so forth' they mean to include by use of the general reference not everything else but <u>only others of like kind</u>"). Such phrases must be applied in a limited fashion, not the expansive effort undertaken by the defendant to sweep the sentence far beyond its obvious scope. *See United States v. Dauray*, 215 F.3d 257, 262 (2d Cir. 2000) (indicating that such

16

phrases "should be construed to complete the class of items or things in the list preceding it," not enlarge it).  In other words, the proper interpretation is a "far more restrictive[]" conception of similar devices, *see Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384-85 (2003), which cannot reasonably be applied here.

The insurance company's effort to expand the exclusion in this fashion would also invite absurd results.  *See, e.g.*, *Welch*, 158 Conn. App. at 198 ("We will not construe a contract's language in such a way that it would lead to an absurd result").  Taken out of the necessary context related to fireworks and Roman Candles and other light displays, the language related to "devices that produce, when ignited or activated, sound, smoke, [or] motion" would apply to an immeasurably broad category of items.  A smart phone, when "activated," will produce "sound."  Cigars and cigarettes produce "smoke" when they are "ignited."  If the plaintiff had been injured in the exact same manner when an insured negligently started a campfire as part of the Cinco de Mayo celebration, or lit candles on a cake prepared for the festival's attendees, the defendant's expansive view of the concluding portion of the operative sentence would exclude coverage, even though it has nothing to do with any "fireworks" display.  In stretching the bounds of this provision so far past the breaking point, the defendant shows the faulty nature of its perfunctory suggestion.

Finally, even if reasonable minds could differ as to whether this broad concluding phrase could sweep an antique historical and ceremonial object within the meaning of a "firework," that still would not excuse the defendant's refusal to defend its insured.  *See Nash Street*, 337 Conn. at 10 (instructing that "any uncertainty . . . works in favor of providing a defense to an insured").  The posture of this case, with any uncertainty or ambiguity defeating the insurance company's position, precludes this ill-conceived argument.

17

**D.      The Plural Nature of the Undefined Terms in the Exclusion Further Compelled a Defense of the Insured.**

The Firearms Exclusion is also ambiguous in that it uses the plural – and <u>only</u> the plural – formulation for the words "firearms" and "fireworks." *See* Dkt. # 48-1 (Policy), p. 52. At least one District Court has found a firearms-related exclusion to be ambiguous for that very reason.

In *AIX Specialty Insurance Company v. Everett*, 543 F. Supp. 3d 1321 (M.D. Fla. 2021), *aff'd*, No. 21-12386, 2022 WL 950936 (11th Cir. 2022), an insurer brought a declaratory judgment action with regard to an exclusion that vitiated coverage for any injury stemming from "the discharge of firearms[.]" *Id.* at 1324. The dispute arose out of an underlying lawsuit in which an injured party alleged that she had been "shot by a [p]rojectile (to wit: a bullet)" on the insured's premises. *Id.*[11] On the parties' cross-motions for summary judgment, the District Court noted that, as an exclusion, the language had to be strictly construed. *Id.* at 1332. Finding it "[s]ignificant[]" that the language "use[d] the plural form of 'firearm'" – which the policy did not define – the District Court held that, "[b]y its plain meaning, this exclusion applies only to the discharge of firearms" in the plural. *Id.* It reasoned that the exclusionary language applied only when it was clear that there had been a discharge of multiple firearms. *See id.* (noting absence of allegations in underlying suit regarding any "discharge of weapons") (emphasis in original). Noting that the duty to defend arose even if the complaint "leave[s] some doubt as to whether the Firearms Exclusion applies," the District Court held that the insurer was required to defend against the claim. *Id.* at 1333.

That analysis was left undisturbed on appeal. The Eleventh Circuit noted that the District

---

[11] Of course, that fact stands in stark contrast to the unique circumstances in this case, wherein the plaintiff was not struck by a bullet, and she affirmatively alleged that the device that injured her had not been capable of shooting any ammunition at all. *See* Dkt. # 48-2, ¶ 11. As noted above, the plaintiff is unaware of any judicial decision that has applied any firearms exclusion to an antique device that is incapable of shooting a projectile. *See* section I-A.

18

Court had "interpreted the exclusion as <u>barring coverage only when there was an incident that involved the discharge of multiple weapons</u>," and that the duty to defend had been triggered "[b]ecause the complaint [by the injured party] alleged that the incident involved the discharge of a single weapon[.]" *See* 2022 WL 950936 at *3. Because the insurance company had failed to brief that particular analysis, the Eleventh Circuit affirmed the District Court's conclusion of ambiguity on that ground. *See id.*

Although the above-referenced reasonable definitions of the operative terms provide a strong basis for ambiguity or uncertainty sufficient to trigger the duty to defend, *see* sections I-A-C, the fact remains that the exclusively plural formulation of the Firearms Exclusion provides yet another reason why the insurer was required – at a minimum – to defend. Like *AIX*, the underlying complaint in this case avers that just one device, not "multiple" devices, *see id.*, had brought about the plaintiff's injuries. *See* Dkt. # 48-2, ¶¶ 9-13 (referring to antique device in the singular). That ruling clearly qualifies as a decision in another "jurisdiction[] [that has] interpreted the same language in a manner that could result in coverage," such that the resulting "legal uncertainty" required the insurer to comply with its duty to defend. *See Nash Street*, 337 Conn. at 13; *see also Hugo Boss Fashions, Inc.*, 252 F.3d at 620 n.11 (explaining that, despite numerous decisions in insurer's favor, "[t]he existence of [a] prior district court decision" to the contrary "rendered uncertain the question of whether the courts would deem the [operative] term . . . to be unambiguous").[12]

Although the Firearms Exclusion is plainly ambiguous for the reasons set forth above, *see* sections I-A-C, the same considerations that created an uncertainty in *AIX* apply here. The exclusionary language is phrased entirely in the plural form. *See* Dkt. # 48-1 (Policy), p. 52. Not

---

[12] The District Court ruling in *AIX* was a published decision issued on June 16, 2021. *See* 543 F. Supp. 3d at 1334. The plaintiff's underlying claim against the defendant's insured did not go to judgment until nearly a year later, on June 6, 2022. *See* Dkt. # 48-6.

once does the exclusion use the word "firearm" or "firework" in the singular. *See id.* But the underlying complaint left no doubt that only one device – not multiple – had caused the plaintiff's injury. *See* Dkt. # 48-2, ¶¶ 9-13. This additional problem with the defendant's refusal to defend counsels further in favor of judgment in the plaintiff's favor.

E.    **The Defendant's Refusal to Pursue a Declaratory Judgement Action Confirms the Problematic Nature of Its Breach of the Duty to Defend.**

Given the inherent ambiguity presented by the facts of this case against the undefined terminology in the Firearms Exclusion, it was at least "in doubt" whether the exclusion was clearly applicable on the face of the underlying complaint. *See Hugo Boss Fashions, Inc.*, 252 F.3d at 623. Both Second Circuit and Connecticut precedent take a dim view of the tactics employed by this defendant – namely, rejecting any defense out of hand, without seeking a coverage adjudication from the courts. Even in a scenario in which a coverage dispute may "ultimately be resolved . . . in favor of the insurer," that does not justify abandoning the insured at the outset of a claim. *See id.* at 620 ("But until [coverage is adjudicated], the insurer cannot avoid its duty to defend"). Instead, "the prudent, if not ordinary, course would . . . be[] for the defendant to defend its insured under a reservation of rights and separately pursue a declaratory judgment action to resolve the legal uncertainty at issue." *Nash Street*, 337 Conn. at 22.

Even a declaratory judgment action would not have vitiated coverage for the injuries that occurred in this case. *See, e.g., Enviro Express, Inc.*, 279 Conn. at 199 ("[A]ny ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy"). But the breach of the duty to defend makes this Court's task even more straightforward. Any uncertainty as to whether the exclusions were ambiguous, or the mere "possibility of coverage" on the underlying complaint, *see Nash Street*, 337 Conn. at 16 (emphasis in original), required a defense. Since multiple dictionaries and the United States Code appropriately

20

identify "firearm(s)" in a manner that unquestionably would not have applied to the device referenced in the underlying complaint, *see* section I-A, and similar reasonable definitions of "fireworks" do not reach the device at issue in this case, *see* section I-C, the defendant owed a duty to defend. Accordingly, the defendant's motion should be denied, and the plaintiff's cross-motion should be granted.

## II.    UNCERTAINTY STEMMING FROM THE AMBIGUOUS DEFINITON OF "BATTERY" REQUIRED THE DEFENDANT TO DEFEND ITS INSURED.

In what appears to be an afterthought, the defendant offers scant briefing directed to the "Battery Exclusion."[13]  But the exclusion employs a definition of "battery" that requires "physical contact," *see* Dkt. # 48-1 (Policy), p. 44, such that there is – at a minimum – uncertainty or ambiguity as to whether that would have applied to the allegations presented in the underlying complaint.

By defining "battery" to encompass "physical contact with another" person, *see id.*, the exclusion cannot unambiguously apply to this circumstance.  Although the policy does not provide any further definition of "physical contact," one eminently reasonable conception is that the word speaks to "the fact of someone's body touching someone else[.]"[14]  After all, the word "physical" necessarily means "of or relating to the body."[15]  And Connecticut law recognizes that a "battery" is

---

[13]  With less than one and one-half pages of its brief, the defendant's deficient briefing has abandoned this argument.  *See Kurowski*, 1988 WL 25417, at *6 (two-page briefing insufficient to preserve issue).  And the defendant does not assert that the "assault" portion of the exclusion would have applied, but instead limits its point solely to "battery."

[14]  *See* Cambridge Dictionary, online available https://dictionary.cambridge.org/us/dictionary/english/physical-contact (last visited 9 Feb. 2025).

[15]  *See* Merriam-Webster's Unabridged Dictionary, online available https://www.merriam-webster.com/dictionary/physical (last visited 9 Feb. 2025); *see also* American Heritage Dictionary, online available https://ahdictionary.com/word/search.html?q=physical (same) (last visited 9 Feb. 2025); Oxford English Dictionary, online available https://www.oed.com/search/dictionary/?scope=

defined as "[a]ctual, physical contact." *See Maselli v. Regional School Dist. No. 10*, 198 Conn. App. 643, 660 (2020) (quoting *DeWitt v. John Hancock Mutual Life Ins. Co.*, 5 Conn. App. 590, 594 (1985)). In the particular set of facts alleged in the underlying complaint, there is no suggestion that the plaintiff was touched by the body of any of the insureds, nor even that they struck her with an object that they were holding. *See* Dkt. # 48-2, ¶¶ 9-13. The exclusion is therefore inapplicable.

The defendant shows how far it reaches by citing to two inapposite and non-binding decisions. The unpublished Superior Court ruling in *Denny v. Town of Hamden*, No. CV146047401, 2015 WL 1589084 (Conn. Super. March 16, 2015), applied a definition of the phrase that expressly did <u>not</u> require physical contact. *See id.* at \*2. By contrast, the defendant's chosen definition specifically requires not just "physical contact," but that such contact happen "with another" person. *See* Dkt. # 48-1 (Policy), p. 44. And the *Denny* case presented the type of physical contact between persons that is entirely absent from the underlying complaint in this case. *See* 2015 WL 1589084 at \*1 (describing injured person who had been "beat[en] . . . so badly that [he] had bruises on his body," and had been "repeatedly touched . . . inappropriately and jumped on").

Likewise, the defendant's lone remaining citation involves factual circumstances that have nothing in common with this case. In *Mount Vernon Fire Insurance Corporation v. Oxnard Hospitality Enterprise, Inc.*, 219 Cal. App. 4th 876 (2nd Dist. 2013), a dancer at a night club was accosted by a patron, who doused her in "flammable liquid and then set her on fire." *See id.* at 213. Her lawsuit rightly asserted, *inter alia*, a claim for battery. *See id.* at 216 n.5. On those facts, the Court held that the phrase "'physical contact with another' does not distinguish between directly striking an individual and striking an individual through an intermediary object." *Id.* at 217. Likening

---

Entries&q=physical&tl=true (same) (last visited 9 Feb. 2025); Random House Unabridged Dictionary, online available https://www.dictionary.com/browse/physical (same) (last visited 9 Feb. 2025).

the attack to one in which the dancer had been "struck . . . with a closed fist," the Court reasoned that the "intentional" conduct set forth in the dancer's complaint was essentially the same, except that "th[e] fist contained a glass container that was used to strike [her,]" and "the glass [was] filled . . . with a flammable substance used to set [her] afire[.]" *Id.* at 216-17. But that is far removed from what happened here. The plaintiff was not struck, either by the hands of any insured, nor by the antique device in the hands of any insured. She was not struck by a bottle of a flammable substance and then lit on fire, as occurred in *Mount Vernon*. Nor did she assert any cause of action sounding in battery or anything of the sort.[16] To the contrary, the plaintiff presented allegations wherein none of the insureds – either through their own hands, or any object they were holding – made any "physical contact" with her.

Given the reasonable definitions of "physical contact," and the unique circumstances alleged in the underlying complaint, there was at least an "uncertainty" as to whether this exclusion might have applied. *See Nash Street*, 337 Conn. at 10 (explaining that, when "it is unclear from the face of the complaint whether an alleged injury occurred in a manner that is covered by the policy" there is an "uncertainty" sufficient to trigger a duty to defend). The underlying complaint certainly did not "clearly [exclude any] potential for coverage[.]" *See id.* at 17. The underlying complaint alleged that the plaintiff had been injured as a result of powder that emanated from a device controlled by one of the insureds. *See* Dkt. # 48-2, ¶¶ 9-12. Although the plaintiff may have been in "close range" of that act, *see id.*, ¶ 13, there was no indication of any physical contact between the insured and the plaintiff, or the device in the hands of the insured and the plaintiff. No allegation suggested that any

---

[16] In a subsequent unpublished decision, the Court confirmed that the *Mount Vernon* decision was based on the extraordinary facts of that case, which are not present here. *See Masson v. Mid-Century Ins. Co.*, No. B278895, 2018 WL 2440078, at *4 (Cal. App., 2nd Dist. May 31, 2018) ("[C]ommon sense informs that an attack with a glass filled with a flammable liquid to set someone on fire constitutes a battery").

insured had laid hands on the plaintiff, nor that anyone had used the antique device to strike her. Based on the several reasonable definitions discussed herein, the fact that powder in the air landed upon the plaintiff simply does not constitute "physical contact between" two persons.

Under the defendant's application of this exclusion, any indirect injury would come within the scope of supposed "physical contact with another[.]" The insurance company's view would compel disclaiming coverage if an insured had negligently started a campfire in a manner that put smoke or flames into the air and burned a nearby spectator. The defendant's view would also exclude coverage if a poorly secured drum rolled down a hill during the Cinco de Mayo parade and rolled into an unassuming spectator. Those acts – while potentially negligent – would not constitute a battery in any sense of the word. But the defendant's cursory suggestion that "physical contact" unambiguously reaches such indirect injuries would compel that absurd conclusion.[17]  Such a construction cannot be countenanced, certainly not as a matter of law. *See, e.g., Welch*, 158 Conn. App. at 198 (precluding construction that would produce absurd results).

The duty to defend posture precludes applying the defendant's construction in this case. At a minimum, further investigation would have been necessary before deciding whether such an exclusion could possibly have applied to these facts. As the claims examiner who issued the declination acknowledged, when testifying under oath, the application of this exclusion "would depend on the claim facts" in any given case. *See* Ex. C, Bard Depo., p. 88. Although *contra*

---

[17]  When testifying as the defendant's corporate representative pursuant to Rule 30(b)(6), the claims examiner suggested that the exclusion would apply to "an[y] object that ends up hurting" someone if that object "stems from a person[.]" *See* Ex. C, Bard Depo., p. 104. Although the insurance company declines to argue that construction in its brief, this view underscores the uncertainty here. Nothing in the underlying complaint suggests that any "object" struck the plaintiff at any time. And, even if it had, the idea that any injury that "stems from [another] person" would amount to physical contact for purposes of a battery would stretch this exclusion so far as to be meaningless.

*proferentem* likely would have precluded any such vitiation of coverage by construing ambiguity within the meaning of "physical contact with another" in favor of coverage, *see Enviro Express, Inc.*, 279 Conn. at 199, the defendant rushed to deny coverage outright instead of pursuing the "prudent [and] ordinary" path of defending the insured subject to a declaratory action to secure a judicial determination of the meaning of any applicable exclusion. *See Nash Street*, 337 Conn. at 22. Because there was at least an "uncertainty" that presented at least the "possibility of coverage" under this provision, even if there may not "actually [have been] coverage" in the end, the insurance company still owed a duty to defend. *See id.* at 23 (emphases in original). By violating its obligation to do so, the defendant cannot prevail.

### III.   BECAUSE THERE WAS A POSSIBILITY FOR COVERAGE, THE DEFENDANT BREACHED ITS DUTY TO DEFEND.

As the foregoing analysis demonstrates, there was – at a minimum – an uncertainty as to whether exclusionary language precluded coverage. Because they defendant cannot carry its burden to prove that there was "clearly no potential for coverage" on the face of the underlying complaint, the mere "possibility of coverage [should have] triggered the insurer's duty to defend." *See id.* at 9-10, 17. By failing to do so, the defendant breached its duty, such that it is liable for the underlying judgment and resulting interest. *See R.T. Vanderbilt Co.*, 273 Conn. at 470–71 (2005); *Black*, 239 Conn. at 164–66.

25

## Conclusion

The plaintiff respectfully requests that the defendant's motion for summary judgment be denied and that the plaintiff's accompanying cross-motion be granted.

Respectfully submitted,

YAHAIRA MACA SALGADO

By: //s// James J. Healy (ct28447)
    James J. Healy
    Allison D. White
    Cowdery, Murphy & Healy, LLC
    280 Trumbull Street, 22nd Floor
    Hartford, Connecticut 06103
    (860) 278-5555
    (860) 249-0012 Fax
    jhealy@cmandh.com
    awhite@cmandh.com

    Leonard M. Isaac
    Isaac Law Offices, LLC
    270 Farmington Avenue, Suite 345
    Farmington, Connecticut 06032
    (860) 255-7118
    (860) 321-8237 Fax
    LIsaac@isaaclawllc.com

    James J. Nugent
    Fed Bar No. ct05792
    31 Broadway
    North Haven, Connecticut 06473
    (203) 795-1111
    (203) 777-6442 Fax
    jim@nugentlawyers.com

    – Her Attorneys –

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2025, a copy of the foregoing was filed electronically to be received under seal.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

 //s// James J. Healy (ct28447)
James J. Healy