UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

YAHAIRA MACA SALGADO,

Plaintiff,

v.

UNITED STATES LIABILITY INSURANCE
COMPANY,

Defendant.

Case No. 3:23-cv-01233-SFR

**DEFENDANT UNITED STATES LIABILITY INSURANCE COMPANY'S
MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 52]**

Defendant United States Liability Insurance Company ("USLI") respectfully submits this memorandum in opposition to the Plaintiff Yahaira Maca Salgado's ("Plaintiff") Cross-Motion For Summary Judgement (ECF No. 52) (the "Cross-Motion").

## I.    INTRODUCTION

In an attempt to sow ambiguity where none exists, Plaintiff's argument regarding USLI's purported duty to defend implausibly stretches her own allegations in the underlying action[1] while simultaneously contorting the plain language of USLI's policy.  Plaintiff's hyper-technical exercise in an effort to create ambiguity is one which courts widely disfavor when interpreting insurance policy provisions and exemplifies the mental gymnastics that no reasonable person would undertake.  Simply put, the Plaintiff cannot escape what she alleged, nor can she impute abstruse meaning into a policy that plainly says what it says.  Thus, for the reasons stated herein and those provided in USLI Memorandum of Law in Support of its own Motion for Summary Judgment (ECF No. 46), which is specifically incorporated by reference to avoid repetition, USLI

---

[1]    *Yahaira Salgado v. Max Sanchez et al.*, Docket No. WWM-CV20-6020091-S, filed in the Superior Court for the Judicial District of Windham at Putnam ("the Underlying Action")

1

respectfully requests that Plaintiff's Cross-Motion for Summary Judgment be DENIED in its entirety, and that USLI's Motion for Summary Judgment be ALLOWED.

## II.    FACTUAL BACKGROUND

The factual background of this matter is set forth in USLI pleadings and its Statement of Material Facts ("SOF") in Support of its Motion for Summary Judgment, ECF No. 47. For purposes of opposing Plaintiff's Cross-Motion, USLI repeats those facts bearing on the Plaintiff's underlying allegations and the applicable provisions of USLI's policy.

### A.    The Policy.

As previously discussed, USLI issued Special Event Commercial Liability Policy No. CL 1926730 to Rodrigo Rodriguez as the Named Insured for the Policy Period of May 4, 2019 to May 6, 2019 (the "Policy"). ECF No. 47, SOF ¶ 1, Ex. 1 (the Policy). The Policy pertained to a Cinco de Mayo Parade that occurred on May 4, 2019 in Willimantic, Connecticut, which was organized by Rodrigo Rodriguez, among others. ECF No. 47, SOF, ¶¶ 6, 7, 8.

The Policy was specifically issued with the endorsement captioned "**EXCLUSION FOR FIREARMS, FIREWORKS AND OTHER PYROTECHNIC DEVICES**" (form L 608 (02-11)) (the "Firearms Exclusion"), which provides the following:

> **A.** This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical expenses including damages for care and loss of services:
>
> **1.** Arising from the ownership, maintenance, operation, sponsorship, set-up or take-down or other use of:
>
> **a.** Firearms, including handguns, revolvers, pistols, rifles, shotguns, air guns, semiautomatic weapons and similar devices;
>
> **b.** Fireworks, including firecrackers, Roman Candles, pinwheels skyrockets, ground displays, flares, smoke bombs and similar devices that produce, when ignited or

2

> activated, sound, smoke, motion or a combination of these;
>
> by any Insured or by any person for which any Insured may be held liable in any capacity.
>
> **B.** This insurance does not apply to any obligation of any Insured to indemnify, defend or contribute jointly or severally with another because of "bodily injury", "property damage", "personal and advertising injury" or medical expenses arising from any of the activities specified in **A.1.**, above.

ECF No. 47, SOF, ¶ 5, Ex. 1 (the Policy), p. 51.

Additionally, the Policy contained an endorsement captioned "**ASSAULT or BATTERY EXCLUSION**" (form L 461 (12-11)) (the "Assault or Battery Exclusion"), which provides, in relevant part, that this insurance does not apply to:

> Any claim, demand or "suit" based upon any actual or alleged "assault" or "battery". . . Further, no coverage is provided for any claim, demand or "suit" in which the underlying operative facts constitute "assault" or "battery".
>
> This exclusion applies to all "bodily injury", "property damage" or "personal and advertising injury" sustained by any person, including emotional distress and mental anguish, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving "assault" or "battery" whether alleged, threatened or actual. . .
>
> .    .    .
>
> "Battery" means negligent or intentional physical contact with another without consent that results in physical or emotional injury.

ECF No. 47, SOF, ¶ 6, Ex. 1 (the Policy), p. 43.

## B.  The Underlying Suit And The Current Action.

On July 9, 2023, Plaintiff filed her complaint in the Underlying Action, alleging that while attending the Cinco de Mayo parade "Sanchez discharged his muzzle-loading black powder antique firearm in [her] direction". ECF No. 47, SOF, ¶ 9, Ex. 2 (Underlying Complaint), ¶ 9.

3

According to Plaintiff, "Sanchez's antique firearm was designed to use, and indeed did use, black powder." ECF No. 47, SOF, ¶ 10, Ex. 2 (Underlying Complaint), ¶ 10. However, "Sanchez's antique firearm was not designed to use, and did not use, fixed ammunition." ECF No. 47, SOF, ¶ 10, Ex. 2 (Underlying Complaint), ¶ 11. Plaintiff further alleged that as a result of the discharge, "[b]lack powder from [ ] Sanchez's antique firearm struck Plaintiff, causing injury." ECF No. 47, SOF, ¶ 11, Ex. 2 (Underlying Complaint), ¶ 13. As a result, Plaintiff suffered severe burns, profuse bleeding, and scarring, among other things. ECF No. 47, SOF, ¶ 11, Ex. 2 (Underlying Complaint), pp. 2-3, 4, 5-6, 7.

In light of Plaintiff's allegations, by correspondence dated November 19, 2019 USLI denied coverage for the Plaintiff's claim citing, among other things, the Policy's Assault or Battery Exclusion and the Firearms Exclusion. ECF No. 47, SOF, ¶ 26, Ex. 9 (Letter to Insured).

### III.    STANDARD OF REVIEW

On cross-motions for summary judgment, the Court "evaluate[s] each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Jingrong v. Chinese Anti-Cult World Alliance Inc.*, 16 F. 4th 47, 56 (2d Cir. 2021), *citing Nam v. Permanent Mission of Republic of Korea to United Nations*, 118 F.4th 234, 245 (2d Cir. 2024). As noted in USLI's opening brief, insurance policies are construed according to general rules of contract interpretation. *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 446–47 (D. Conn. 2010). They are thus "enforced in accordance with the parties' intent, as derived from the plain and ordinary meaning of the policy's terms." *Id.* (citations omitted). "The primary rule is that the Court must read the policy language as a layman, rather than as an experienced underwriter and should not torture words to import ambiguity where none exists." *Id.*, *citing Jurrius v. Maccabees Mut. Life Ins. Co.*, 587 F. Supp. 1301 (D. Conn. 1984).

## IV.    ARGUMENT

### A.    Plaintiff Fails To Articulate Any Legitimate Factual Ambiguity Concerning Her Own Allegations.

Plaintiff's first error is her complete failure to acknowledge her own allegations in the underlying action. As recognized in her Cross-Motion, "the duty to defend is evaluated on the allegations set forth in the complaint[.]"[2] *Ibid.* at p. 8, *citing Captstone Bldg. Corp. v. Am. Motorists Ins. Co.,* 308 Conn. 760, 805 (2013). Where the Policy's Firearms Exclusion plainly excludes coverage for "bodily injury. . . [a]rising from the ownership, maintenance, operation, sponsorship, set-up or take-down or other use of. . . [f]irearms", the fact that Plaintiff's complaint specifically alleged injury brought about by a "muzzle-loading black powder antique <u>firearm</u>" definitively ends the inquiry. *Compare* <u>ECF No. 47</u>, SOF, ¶ 5, Ex. 1 (the Policy), p. 51, *with id.* at ¶ 9, Ex. 2 (Underlying Complaint) at ¶ 9 (emphasis underscored).

In an attempt to circumvent this, however, Plaintiff now baldly states that the "muzzle-loading black powder antique firearm" was "incapable of shooting any ammunition or projectile", a "relic of the distant past that cannot shoot any solid objects", "incapable of shooting any projectile or bullet", and that the complaint "made clear that this device [ ] could not shoot a

---

[2]    Although Plaintiff recognizes that "the duty to defend analysis should be restricted to the four corners of the underlying complaint", she nonetheless contends that USLI "knew full well before it issued this Policy that the Cinco de Mayo celebration featured these types of antique muskets." Cross Motion at p. 11. This argument is unsupported by the very deposition testimony upon which the Plaintiff relies. During USLI's Rule 30(b)(6) deposition with underwriter Lisa Flowers testifying as the designee, counsel asked with respect to a photo retrieved through the underwriting department's web search "[d]o you see what people are carrying in their arms?" <u>ECF No. 51-2,</u> Plaintiff's Ex. B (Flowers Depo.), 76:18 – 76:19. *See also* <u>ECF No. 52-1</u>, Plaintiff's Ex. a (Photograph). Ms. Flowers first answered, "I see they're carrying sticks of some sort." <u>ECF No. 51-2,</u> Plaintiff's Ex. B (Flowers Depo.), 76:20. Equally, when initially shown this "photographic proof that these types of devices would be present", *see* Cross Motion at p. 12, Ms. Flowers testified that "the [photo] information that was obtained through this was from 2013, so it's not really valid for the year 2019. . . It was from a previous year. So we can't assume that anything in that web search is valid for the 2019 policy year." *Id.* at 70: 17 – 71:1. Moreover, because USLI obtained this information from its own internal web search, *see* 70:9 – 77:22, Plaintiff's assertion that the policyholder "[knew] that the insurance company has received a brochure showing these types of ceremonial muskets" is baseless. *See* Cross Motion at p. 12. Regardless, Plaintiff's arguments are a nonstarter because she has not argued that USLI was estopped from denying coverage, nor has she amended her complaint in this matter to assert same.

projectile[.]" Cross-Motion at pp. 9, 10, 12.  This is an after-the-fact amendment to her underlying complaint and simply not what she alleged.  Indeed, her argument is nonsensical for four (4) distinct reasons.

First, Plaintiff specifically averred in her complaint that she was injured by a "firearm" which, inherently by use of the term, means that it was capable of discharging projectile under any of her proffered dictionary definitions.  Plaintiff cannot retrospectively change her allegations to argue that although her complaint asserted injury caused by a "muzzle-loading black powder antique firearm", ECF No. 47, SOF, ¶ 9, Ex. 2 (Underlying Complaint) at ¶ 9 (emphasis underscored), it was nonetheless "incapable of shooting any ammunition or projectile", therefore her complaint did not actually allege that she was injured by a "firearm."  This reasoning is self-justifying in a profoundly circular manner and simply improper.

Second, Plaintiff's qualification that the firearm was a "muzzle-loading black powder antique" that was "not designed to use, and did not use, fixed ammunition" does not change its ultimate designation as a firearm in any respect.  It bears noting that both the Merriam-Webster and American Heritage dictionaries define a "muzzleloader" as "a firearm that loads at the muzzle" (emphasis underscored).[3]  Moreover, "fixed ammunition" is defined by Merriam-Webster to mean "ammunition in which the projectile is permanently attached to a case that contains the primer and the propellant in distinction from separate-loading ammunition."[4]  Applying logic, all firearms are capable of discharging a projectile by definition, however not all firearms are capable of using fixed ammunition (*i.e.*, using separate-loading ammunition instead).  Equally, qualifying a firearm

---

[3]        "Muzzleloader", MERIAM-WEBSTER DICTIONARY (last visited February 25, 2025), https://www.merriam-webster.com/dictionary/muzzleloader; "Muzzleloader", THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (last visited February 25, 2025), https://ahdictionary.com/word/search.html?q=muzzleloader.  For avoidance of doubt, "muzzle-loading" is the specified adjective for the noun "muzzleloader".  *See id.*

[4]        "Fixed ammunition", MERIAM-WEBSTER DICTIONARY (last visited February 25, 2025), https://www.merriam-webster.com/dictionary/fixed%20ammunition.

as an "antique" does not make it any less of a firearm which, nevertheless, is a difference without a distinction where the Policy does not except antiques nor use the term at all.[5]  As such, these arguments equally provide no avenue for Plaintiff to retrospectively change her allegations, let alone contend that she never alleged a firearm "incapable of shooting any projectile or bullet".

Third, Plaintiff's contention that she "did not allege that she was injured by any bullet, ammunition, or other projectile" is irrelevant, including her corollary insinuation that the Firearms Exclusion only applies in circumstances where someone is struck by one.  *See* Cross-Motion at pp. 8, 9 & 18.  The Policy's Firearms Exclusion excludes coverage for bodily injury "[a]rising from the ownership, maintenance, operation, sponsorship, set-up or take-down or other use of. . . [f]irearms."  ECF No. 47, SOF, ¶ 5, Ex. 1 (the Policy), p. 51.  As noted in USLI's opening brief on page 11, Connecticut courts interpret phrases like "arising from" broadly in a way that "bodily injury" need only be "connected with," "had its origins in," "grew out of," "flowed from," or "was incident to" the operation or other use of a firearm in this circumstance.  *See Williams v. MESA Underwriters Specialty Ins. Co.*, 538 F. Supp. 3d 234, 245 (D. Conn. 2021) (noting interpretation of "arising from").  The fact that an individual discharged a firearm in her direction is sufficient to trigger the exclusion; it does not require that she be struck by "any bullet, ammunition, or other projectile", nor is there any basis to impute such a requirement.

Finally, Plaintiff's remaining contentions regarding the definitions specifically provided in the federal Gun Control Act, *see* 18 U.S.C. § 921(a)(3), are completely without merit and must be rejected.  *See* Cross-Motion at pp. 10-13.  In anticipation of this tactic, USLI previously briefed the issue for the Court on pages 13 through 16 of its opening papers which need not be repeated

---

[5]      For further illustration, subsection **V.2.a.** of the Policy defines an "auto" as meaning, in part, "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads".  ECF No. 45, SOF, ¶ 5, Ex. 1 (the Policy), p. 19.  A pedestrian struck by a 1908 Ford Model T would not reason that no "land motor vehicle" was involved simply because it was over 117 years older than its modern counterparts.

here.  Beyond this, Plaintiff's flawed application of *Nautilus Ins. Co. v. Action ATM Inc.* may be dealt with in brief.  *See* Cross-Motion at p. 8. *See also Nautilus Ins. Co. v. Action ATM Inc.*, No. 3:16-CV-0295-GCS, 2019 WL 6918502, at \*2 (S.D. Ill. Dec. 19, 2019).

The at-issue policy in *Nautilus Ins. Co.* contained a weapons exclusion which, paraphrased, excluded coverage for "bodily injury" arising out of "[t]he. . . use of any 'weapon.'"  2019 WL 6918502, at \*2.  In turn, the policy defined "weapon" to include "[f]irearms as defined in the Gun Control Act, 18 USC § 921(a)(3). . ." *Id.*  Without belaboring the point, the federal definition of "firearm" provided in 18 U.S.C. § 921(a)(3) was only relevant in *Nautilus Ins. Co.* because it was specifically incorporated into the at-issue policy.  *See id.* \* 4 ("In construing an insurance policy, the court must ascertain and give effect to the intentions of the parties as expressed in their agreement.").  Contrary to the Plaintiff's argument, *Nautilus Ins. Co.* does not stand for the proposition that the federal regulatory definition of a "firearm" is the benchmark, let alone from the perspective of a lay person who may never even read the legislation.

Plaintiff's argument with respect to factual ambiguity is a quintessential example of a litigant attempting to have their cake and eat it too.  This is not an exercise in word play or the opportunity to supplement allegations with additional, un-plead conclusions.  Instead, the analytical focus is on what the Plaintiff alleged in her underlying complaint vis-à-vis the plain terms of the Policy which, ultimately, is far simpler than Plaintiff suggests.  Because she claimed injury resulting from the discharge of a "muzzle-loading black powder antique firearm", there is no uncertainty as to whether the "alleged injury occurred in a manner that is covered by the policy".  *See Nash St., LLC v. Main St. Am. Assurance Co.*, 337 Conn. 1, 10 (2020).  *See also* <u>ECF No. 47</u>, SOF, ¶ 9, Ex. 2 (Underlying Complaint) at ¶ 9.  Moreover, USLI relied on Plaintiff's assertion that she was injured by a "muzzle-loading black powder antique *<u>firearm</u>*" when it issued its coverage

8

declination.  ECF No. 47, SOF, ¶ 9, Ex. 2 (Underlying Complaint) at ¶ 9 (emphasis added). *See also* ECF No. 48-9, Defendant's Ex. 9 (Nov. 9, 2019 Letter), p. 1.  In these circumstances, Plaintiff should be estopped from now claiming that she was injured by anything other than a firearm, antique or not.[6]

Because it is clearly apparent that the Firearms Exclusion excluded coverage for Plaintiff's own allegations, USLI simply had no duty to defend the Underlying Action.  Consequently, Plaintiff's Cross Motion must be denied, and USLI's motion for summary judgment allowed.

**B.     Plaintiff's Interpretation Of The Firearms Exclusion Is Objectively Unreasonable, And Is Outweighed By Case Law.**

Moreover, Plaintiff's argument that the Firearms Exclusion is only triggered by a plurality of firearms stretches the bounds of common sense.  Indeed, from the perspective of common usage this interpretation borders on the absurd.  No reasonable person would read the near-universal "No Dogs Allowed" signage outside of stores as meaning that one dog is allowed, but two are not.  A lay person would not interpret state park rules declaring "No Alcoholic Drinks" to mean that consuming one alcoholic beverage is fine, but multiple are problematic.  A space designated as a "Children's Play Area" does not forbid entry for only one child in the very same way that no one would understand "Service Animals Welcome" as requiring escort by more than one guide dog.  On the other end of this, a reasonable person certainly would interpret a "No Firearms Allowed" sign to prohibit bringing even a single firearm into the facility on which it is posted.[7]

---

[6]     "The doctrine of estoppel is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his or her detriment." *Vasily v. MONY Life Ins. Co. of Am.*, 104 F. Supp. 3d 207, 216 (D. Conn. 2015), *citing* 28 Am.Jur.2d *Estoppel & Waiver* § 1 (2015).  Under Connecticut law, the party asserting equitable estoppel must show two elements: first, that a party did or said something "calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and that the other party ... changed its position in reliance on those facts, thereby incurring some injury." *Id.* (internal markings omitted), *quoting Winchester Indus., Inc. v. Sentry Ins.,* 536 F.Supp.2d 203, 210 (D.Conn.2008).

[7]     In the context of statutory interpretation secondary sources refer to this as a "number cannon", where "the singular includes the plural (and vice versa)." *See* Kevin Tobia et. al., Statutory Interpretation from the Outside, 122 Colum. L. Rev. 213, 252 (2022), *citing* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal

For this reason, Plaintiff's reliance on *AIX Specialty Ins. Co. v. Everett* is misplaced. *See* Cross-Motion at pp. 18-20. Unlike the Plaintiff's allegations in the Underlying Action, the operative complaint in *AIX Specialty Ins. Co.* did not allege that any firearm was involved, but rather that she was simply shot by a 'Projectile (to wit: a bullet)'. *Id.* at 1132. Additionally, the court specified that the operative exclusionary language "uses the plural form of 'firearm' and distinguishes between the discharge of firearms by 'person' and the discharge of firearms by 'persons' by utilizing 'or,' a disjunctive". *See id.* The delineation between "person" or "persons" with respect to a sole "firearms" reference is a construction completely absent in the Firearms Exclusion at-issue here. Further, Plaintiff also misleadingly states that "the Eleventh Circuit affirmed the District Court's conclusion of ambiguity" because the insurer did not brief the issue. Cross-Motion at p. 19. This is incorrect. The Eleventh Circuit specifically stated that it would "not reach the question of whether the district court properly interpreted the policy" because the insurer abandoned any challenge to the district court's ruling. *AIX Specialty Ins. Co. v. Everett*, No. 21-12386, 2022 WL 950936, at *3, fn. 5 (11th Cir. Mar. 30, 2022).[8]

In contrast, other jurisdictions have had no issue concluding that exclusions using the term "firearms" are unambiguous without any consideration to the distinction between singular or

---

Texts (2012) at 129-30. Connecticut has adopted a number canon for statutory interpretation, *see* Conn. Gen. Stat. Ann. § 1-1 ("Words importing the singular number may extend and be applied to several persons or things, and words importing the plural number may include the singular."), which is equally employed by the federal government. *See* 1 U.S.C.A. § 1 (West) ("In determining the meaning of any Act of Congress, unless the context indicates otherwise. . . words importing the plural include the singular[.]"). Of course, this is not a matter of statutory interpretation, and (clearly) these statutes do not control here. Nevertheless, such indicates that this concept exists as a general cannon of linguistics and is far from novel, whereas Plaintiff's interpretation is.

[8]    Indeed, and although following USLI coverage declination, it bears referencing that other courts following the *AIX Specialty Ins. Co.* decision have expressly rejected that court's reasoning. *See, e.g.*, *Bakhsh v. Mount Vernon Fire Ins. Co.*, No. 4:22-CV-02584-JD, 2023 WL 4088840, at *4 (D.S.C. June 20, 2023) (applying South Carolina law) ("Although Plaintiffs attempt to make a similarly strained argument regarding the firearms exclusion only applying to incidents involving more than one firearm, the Court is equally unpersuaded by the Florida district court case cited in its [ ] opposition based on the facts of this case."). *See also* Plaintiff's Memorandum in Opposition to Mount Vernon's Motion for Judgment on the Pleadings, *Brad Bakhsh et al. v. Mount Vernon Fire Insurance Company et al.* C.A. No. 22-cv-02584, United States District Court, D. South Carolina, ECF. No. 12 at p. pp. 7-8 (arguing applicability of *AIX Specialty Ins. Co.*, *supra*).

multiple, and where only one firearm is alleged. *See, e.g., Hudson Specialty Ins. Co. v. Snappy Slappy LLC*, No. 5:18-CV-00104-TES, 2019 WL 1938801, at *2 (M.D. Ga. May 1, 2019) (where individual "was shot, with a gun, used on premises", bodily injury clearly arose "out of the [ ] use of firearms or weapons" and applicable firearms exclusion unambiguously excluded coverage); *United States Liab. Ins. Co. v. Griffith*, No. 1:16-CV-01735-ELR, 2017 WL 3521644, at *1 (N.D. Ga. May 10, 2017) (finding no ambiguity in exclusion where policy excluded "bodily injury. . . arising out of firearms" and where man shot once in chest with 22-caliber silver revolver); *Williams v. Andrus*, 2011-239 (La. App. 3 Cir. 10/5/11), 74 So. 3d 818, 820, *writ denied*, 2011-2464 (La. 1/20/12), 78 So. 3d 144 (concluding policy unambiguously excluded coverage where it excluded bodily injury "arising out of. . . use or misuse of any firearms", and plaintiff's claims arose out of allegations that "a firearm" was used to shoot decedent). *Cf. Mt. Hawley Ins. Co. v. Persaud USA Prop. Holdings LLC,* No. 23 CIV. 1386 (JPC), 2024 WL 4132559, at *6 (S.D.N.Y. Sept. 10, 2024) (applying New York law) (post coverage declination) (allowing insurer's motion for judgment on the pleadings where Plaintiff shot with 9 millimeter Glock weapon, and policy excluded bodily injury "arising out of the. . . use or misuse of any firearms").

Setting aside the fact that Plaintiff's interpretation is simply not a reasonable one, there is clearly no "split of authority in other jurisdictions as to the meaning of [this] particular policy provision" justifying a finding that the Firearms Exclusion is ambiguous. *See Nash St., LLC v. Main St. Am. Assurance Co.*, 337 Conn. 1, 11, 251 A.3d 600, 607 (2020). Moreover, the purpose of seeking a declaration from the Court to "provide relief from uncertainty". *See Allstate Ins. Co. v. Essiam*, No. 3:15-CV-00180 JCH, 2015 WL 3796243, at *2 (D. Conn. June 17, 2015). Because of the plain terms of the Firearms Exclusion and Plaintiff's black letter allegations discussed above, there simply was no doubt to be resolved. Accordingly, USLI was plainly (and correctly) within

11

its right to decline coverage without court intervention.  The Court should therefore allow USLI's motion for summary judgment and deny Plaintiff's Cross-Motion.

**C.      Plaintiff's Analysis Concerning The Fireworks Provision Obscures the Point, But Nonetheless Arrives At The Same Result.**

Plaintiff's commentary on subsection **A.1.b** of the Firearms Exclusion is yet another example of overcomplicating a plain analysis in order to belittle the ultimate result.  Nevertheless, application of Plaintiff's own reasoning simply ends in the same place regarding its applicability.

Per the terms of the exclusion, this subsection specifies that the Policy does not apply to "bodily injury":

> **1.** Arising from the ownership, maintenance, operation, sponsorship, set-up or take-down or other use of:
>
> .      .      .
>
> **b.** Fireworks, including firecrackers, Roman Candles, pinwheels, skyrockets, ground displays, flares, smoke bombs and similar devices that produce, when ignited or activated, sound, smoke, motion or a combination of these;

ECF No. 45, SOF, ¶ 5, Ex. 1 (the Policy), p. 51.  The commonality between each of Plaintiff's proffered definitions for "firework" is that the term refers to a combustible and/or explosive device. Cross-Motion at pp. 14-15.   That it may be used as reference to "a colorful light show that takes place high in the sky during summer holidays" is not the question.  *See id* at p. 15.  Indeed, the Policy does not concern whether it produces "a striking display of light."  *Id.*  Instead, the issue is whether a "muzzle-loading black powder antique firearm" that "was designed to use, and indeed did use, black powder" (*id.* at ¶ 10) and from which "[b]lack powder. . . struck Plaintiff[ ] causing injury" is "a similar device" to a "firework" in that "when ignited or activated, [it produces] sound,

smoke, motion or a combination of these[.]"  *Compare* <u>ECF No. 47</u>, SOF, ¶¶ 9, 10, 11, *with* <u>ECF No. 47</u>, SOF, ¶ 5, Ex. 1 (the Policy), p. 51.

Answering this question demands no nuanced legal analysis, but rather the application of commonsense in conjunction with the mandates of policy interpretation discussed in section **III.** above.  It does not require much discussion, let alone (4) pages of briefing, to reach the conclusion that Plaintiff's allegations clearly involved such a similar device so as to trigger section **A.1.b** of the Firearms Exclusion.  Further, Plaintiff's suggestion that this provision as-written would "invite absurd results" is curious where it is patently difficult to equate a smart phone, cigars and cigarettes, a campfire, or birthday candles to a dischargeable black powder-fueled firearm that caused: "severe burns; profuse bleeding; scarring/disfigurement; anxiety; and psychological trauma."  *See* <u>ECF No. 47</u>, SOF, ¶ 14.  Taking the totality of Plaintiff's reasoning in her Cross-Motion as a whole, she was injured neither by a "firearm" nor a device similar to a "firework", but rather an unusual explosive pole shaped like a gun.

Plaintiff remaining argument regarding the plural use of the term "fireworks" fails for the same reasons discussed in section **IV.B.**, *supra*.  Nevertheless, and to continue the exercise, would a reasonable person interpret a condominium rule prohibiting "fireworks" as allowing the ignition of one ear-deafening skyrocket, but not two sparklers?  Here, too, the answer is clearly no.

For these reasons and those discussed in its opening brief, there plainly was not even the remote possibility of coverage for Plaintiff's complaint in the Underlying Action.  As such USLI's duty to defend was never triggered because the clear, unambiguous terms of the Policy's Firearms Exclusion plainly excluded coverage.  For this reason, summary judgment in USLI's favor is warranted, and Plaintiff's Cross-Motion must be denied.

**D.    Plaintiff's Hyper-Technical Analysis Of The Assault Or Battery Exclusion Is <u>Simply Incorrect, And Must Be Rejected</u>.**

Contrary to Plaintiff's analysis, interpretation of an insurance contract is not the practice of parsing down of every single word to then reassemble only specific concepts in order to suggest what a lay person would ultimately read and comprehend.  Yet, that is exactly what her Cross-Motion asserts with respect to the Assault or Battery Exclusion.  At its core, Plaintiff's argument rests on the proposition that because "battery" is defined (in part) to mean "physical contact with another", and because the phrase "physical contact" conceptually may involve "someone's body touching someone else", no "battery" occurred because Plaintiff "was never touched by the body of any of the insureds".  Cross-Motion at p. 22.   Plaintiff's scrutiny again fails for both legal and practical reasons, and her extended effort to conclude otherwise simply provokes unnecessary analysis.

To be clear from the outset, the Assault or Battery Exclusion does not solely exclude coverage in circumstances where an insured, specifically, commits a "battery".  Instead, the first paragraph in the exclusion makes clear that "no coverage is provided for any claim, demand or 'suit; in which the underlying operative facts constitute 'assault' or 'battery'".  ECF No. 47, SOF, ¶ 5, Ex. 1 (the Policy), p. 44.  Despite this, Plaintiff's argument imputes an additional requirement that such must be "caused by the insured."  *Compare* Cross-Motion at pp. 22, 23, *with* ECF No. 47, SOF, ¶ 5, Ex. 1 (the Policy), p. 44.  This is simply not the exclusion's language, therefore it is not a consideration.  Thus, the only inquiry is whether a "battery" occurred as defined by the Policy.

Moving to the legal perspective, Connecticut law regards the tort of battery as a person acting with the intent to cause harmful or offensive contact with another, or of causing an imminent apprehension of such contact, and such harmful or offensive contact was the direct or indirect result.  *See Maselli v. Reg'l Sch. Dist. No. 10*, 198 Conn. App. 643, 660 (2020) (citation omitted).  As indicated by the Plaintiff, battery indeed requires "[a]ctual, physical contact".  *Id.* at 660, *citing*

14

*Maselli*, *supra*.  *See also* Cross-Motion at p. 22.  However, body-to-body touching has never been a requirement; as Connecticut's Supreme Court explained in *Alteiri v. Colasso*, "[i]f the stone had struck the one whom the defendant had intended to frighten, the defendant would have been liable for a battery."  *Ibid.* at 168 Conn. 329, 333–34 (1975).[9]  The corollary to this in the context of policy interpretation, and vis-à-vis the specific exclusionary language involved here, is apparent in *Mount Vernon Fire Ins. Corp. v. Oxnard Hosp. Enter., Inc.*, which remarked:

> Had her assailant struck [the claimant] with a closed fist, there could be no argument that such a striking was not a "battery" under [the] policy. Could the answer be any different if that fist contained a glass container that was used to strike [the claimant]? Certainly no reasonable person would make such an argument. How, then, could or should the result be any different if the glass container were filled, as in this case, with a flammable substance used to set [claimant] afire?

219 Cal. App. 4th 876, 882–83 (2013).  This is a proposition noted in the Restatement of Torts on page 17 of USLI's opening brief, and one with which a reasonable person would also agree.  *Ibid*, *citing* Restatement (Second) of Torts § 18(1)(a) (1965).

The difference between the legal understanding of a battery and a "battery" as the Policy defines that term is the fact that unlike the civil tort, a "battery" under the Policy may be accomplished "negligent [ ] physical contact." ECF No. 47, SOF, ¶ 5, Ex. 1 (the Policy), p. 44. Thus, although the law requires intentionality, the Policy requires only negligence or the "failure to exercise the degree of care that someone of ordinary prudence would have exercised in the same circumstance".[10]  Generally speaking, dictionary definitions align on balance with the legal

---

[9]     *Cf. compare Texeira v. Curren*, No. NNHCV146044710S, 2014 WL 4814722 (Conn. Super. Ct. Aug. 21, 2014) (Unpublished Opinion) (no liability for battery where student locked in a windowless room, and "nowhere in the revised complaint does the plaintiff make reference to any physical contact between [the student] and the defendant.") *and Texeira v. Curren*, No. NNHCV146044710S, 2014 WL 4814722, at *2 (Conn. Super. Ct. Aug. 21, 2014) (internal markings omitted) (Unpublished Opinion) ("The intent required for [the tort of] battery must be an intentional and unpermitted contact with the body of the plaintiff.").

[10]     "Negligent", Black's Law Dictionary (12th ed. 2024).

understanding of what it means to be "negligent".[11]  The "battery" committed in *Oxnard Hosp. Enter., Inc.* without question was intentional, but it does not resolve the question of whether a reasonable person would recognize a negligent "battery" in Plaintiff's underlying complaint.

Thus, the remaining practical issue is whether a layperson would have understood Plaintiff's underlying complaint to have alleged "negligent [ ] physical contact" when she asserted that an individual carelessly and negligently "discharged his muzzle-loading black powder antique firearm in [her] direction" despite circumstances and close range and "[b]lack powder from [the] antique firearm struck [her], causing injury".  *Compare* ECF No. 47, SOF, ¶ 5, Ex. 1 (the Policy), p. 44, *with* Underlying Complaint at ¶¶ 9, 12, 13.  The answer to this is also is clearly yes, especially where not enough attention was paid to responsibly using a black powder firearm at a parade.

Like the Firearms Exclusion, the conclusion that USLI had no duty to defend based on the Assault or Battery Exclusion is not the product of lengthy discussion because, once more, policy interpretation is to be determined "by comparing the allegations of the underlying complaint with the terms of the insurance policy." *Merrimack Mut. Fire Ins. Co. v. Clawson*, No. 3:22-CV-00041 (JCH), 2023 WL 6296020, at *4 (D. Conn. Sept. 26, 2023) (citation & internal markings omitted). Plaintiff's reasoning simply invites esoteric introspection such as whether accelerants like gunpower may ever be an object because they are ephemeral, whether a pedestrian struck by a

---

[11]    *See, e.g.*, "Negligent", MERIAM-WEBSTER DICTIONARY (last visited February 25, 2025), https://www.merriam-webster.com/dictionary/negligent (a: marked by or given to neglect especially habitually or culpably; b: failing to exercise the care expected of a reasonably prudent person in like circumstances; marked by a carelessly easy manner[.]"); "Negligent", THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (last visited February 28, 2025), https://ahdictionary.com/word/search.html?q=negligent ("1: Given to or characterized by neglect, especially habitual neglect; 2: *Law* Acting with or done through negligence."); "Negligent", CAMBRIDGE ACADEMIC AND CONTENT DICTIONARY (last visited February 28, 2025), https://www.collinsdictionary.com/dictionary/english/negligent ("not being careful or giving enough attention to people or things that are your responsibility[.]"); "Negligent", THE BRITANNICA DICTIONARY (last visited February 28, 2025), https://www.britannica.com/dictionary/negligent ("failing to take proper or normal care of something or someone [.]").

vehicle truly experiences physical contact, and what fault may be assigned in abstract for a rolling barrel that strikes a spectator.  Because of this, Plaintiff's contended ambiguity fails scrutiny.

For these reasons and those discussed in its opening brief, coverage for Plaintiff's Underlying Complaint was equally excluded by the Policy's Assault or Battery Exclusion.  As such USLI's duty to defend was never triggered in the first instance.  For this reason, summary judgment in USLI's favor is warranted on this ground as well, and Plaintiff's Cross-Motion must be denied.

## V.      CONCLUSION

For the foregoing reasons and those stated in its opening brief, there no question that the Policy did not provide coverage for Plaintiff's claims in the Underlying Action.  Therefore, USLI is entitled to judgment as a matter of law in its favor in the instant action. WHEREFORE, USLI respectfully requests that this Court DENY Plaintiff's Cross-Motion for Summary Judgment, ALLOW USLI's Motion for Summary Judgment, and award it reasonable attorney's fees and costs of defense in this action, along with any other relief that this Court deems fair, just, and equitable.

Respectfully submitted,

UNITED STATES LIABILITY
INSURANCE COMPANY

By its attorney,

*Scarlett M. Rajbanshi*
Ian J. Gemmell, (Juris No. ct28816)
Scarlett M. Rajbanshi (*pro hac vice*)
Kevin M. Bergin (*pro hac vice*)
Peabody & Arnold LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
(617) 951-2100
igemmell@peabodyarnold.com
srajbanshi@peabodyarnold.com

Dated: March 6, 2025                                      kbergin@peabodyarnold.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2025, a copy of foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Leonard M. Isaac, Esq.
Isaac Law Offices, LLC
270 Farmington Ave., Suite 345
Farmington, CT 06032

*Scarlett M. Rajbanshi*
Scarlett M. Rajbanshi

18