**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| YAHAIRA MACA SALGADO, Plaintiff, | : | |
| v. | : | 3:23-CV-01233 (SFR) |
| UNITED STATES LIABILITY INSURANCE COMPANY, Defendant. | : | |

**MEMORANDUM & ORDER**

Yahaira Maca Salgado ("Salgado") has brought this action against United States Liability Insurance Company ("USLI") pursuant to Connecticut General Statutes § 38a-321, which allows a plaintiff holding a judgment against an insured party to recover directly from the insurance company where the company has breached its duty to defend the insured party in underlying litigation. After Salgado suffered injuries in a Cinco de Mayo celebration in 2019, she obtained a judgment against the insured in Connecticut Superior Court. Following my grant of summary judgment to Salgado in this federal action, Salgado moved for entry of judgment. ECF No. 68. For the following reasons, I enter judgment in Salgado's favor in the amount of $2,628,208.31.

## I. BACKGROUND

I assume the familiarity of the parties with the factual background of the case. On September 29, 2025, I granted Salgado's Motion for Summary Judgment. ECF No. 63. On October 24, 2025, Salgado filed a Motion for Judgment ("Pl.'s Mot."). ECF No. 68. On November 7, 2025, USLI filed its Memorandum in Opposition ("Def.'s Mem."). ECF No. 69.

On November 21, 2025, Salgado filed her Reply ("Pl.'s Reply"). ECF No. 70. On December 23, 2025, the parties requested referral of this case to a U.S. Magistrate Judge for a settlement conference. ECF No. 71. Thereafter, a series of discussions were held. ECF Nos. 73-84. On July 9, 2026, the parties jointly requested that judgment be entered. ECF No. 86.

## II. DISCUSSION

There are four matters that I must determine: (1) the extent of USLI's liability in this federal action for the underlying Superior Court judgment; (2) the postjudgment interest rate and the amount to which that rate applies; (3) the prejudgment interest rate and the amount to which that rate applies; and (4) whether Salgado is entitled to offer-of-compromise interest. I examine each issue in turn.

### A. Extent of USLI's Liability for the State Court Judgment

Judgment for Salgado in the amount of $1,582,131.35 entered in Connecticut Superior Court on June 6, 2022. ECF No. 48-6, at 2. In her Motion, Salgado argued initially that I should award judgment in this federal action for the full Superior Court judgment amount. Pl.'s Mot. 1. USLI maintains that under Connecticut General Statutes § 38a-321 Salgado is subrogated to the rights of the named insured under the insurance policy ("Policy") and thus the judgment in this federal action is limited to the liability limit in the Policy, $1,000,000.[1] Def.'s Mem. 2. In her Reply, Salgado asserts that she "disagrees with the defendant's belief that it should enjoy the benefits of a contract that it refused to honor in the first place." Pl.'s Reply 1. Nevertheless, Salgado states that she "would not oppose entry of a judgment in her favor that abides the

[1] The Insuring Agreement under Coverage A of the Policy states: "The amount we will pay for damages is limited as described in Section III – Limits Of Insurance." ECF No. 48-1, at 8. The limits of insurance section states that "[e]ach Occurrence Limit" is "$1,000,000." *Id.* at 5.

defendant's request to limit the underlying Superior Court judgment up to the $1,000,000 policy limit" but also includes her requests relating to postjudgment interest, prejudgment interest, and offer-of-compromise interest. *Id.* at 2.

Section 38a-321 of the Connecticut General Statutes provides in part:

> Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment.

Conn. Gen. Stat. § 38a-321.

Because Salgado does not object to entry of a judgment in this Court that limits the Superior Court judgment to $1,000,000,[2] I conclude that USLI is liable for $1,000,000 in this federal action. I turn next to the question of interest.

### B. Postjudgment Interest Rate

The parties agree that a 10% postjudgment interest rate applies. Pl.'s Mot. 1; Def.'s Mem. 4. They also agree that postjudgment interest runs from June 26, 2022 through the date that this Court enters judgment in this federal action. Pl.'s Mot. 1; Def.'s Mem. 4. The parties

[2] USLI points to cases including *Schurgast v. Schumann*, where the court said: "In the instant case, Aetna chose to refuse to defend and, in so doing, breached its contract with Schumann. It is therefore under a duty to pay the judgment obtained against Schumann by Schurgast up to the limit of liability fixed by its policy." 156 Conn. 471, 491 (1968); Def.'s Mem. 2. Salgado responds that none of the Connecticut Supreme Court cases cited by USLI actually involved any judgment or settlement in excess of the policy limits. Pl.'s Reply 1-2. I do not reach this issue because Salgado does not press it.

disagree regarding whether the 10% interest rate applies to the full amount of the Superior Court judgment or to the $1,000,000 policy limit.

Section 37-3b(a) of the Connecticut General Statutes provides:

> For a cause of action arising on or after May 27, 1997, interest at the rate of ten per cent a year, and no more, shall be recovered and allowed in any action to recover damages for injury to the person, or to real or personal property, caused by negligence, computed from the date that is twenty days after the date of judgment or the date that is ninety days after the date of verdict, whichever is earlier, *upon the amount of the judgment.*

Conn. Gen. Stat. § 37-3b(a) (emphasis added). The Policy provides that it is obligated to cover postjudgment interest regardless of policy limits. In particular, the Policy states that certain categories of payments will not reduce the limits of insurance, including "[a]ll interest *on the full amount of any judgment* that accrues after entry of judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance." ECF No. 48-1, at 15 (emphasis added). Thus, under the Policy, unless USLI tenders its policy limits, USLI remains obligated to pay all interest "on the full amount of any judgment."

USLI asserts that "a fair and adequate postjudgment interest calculation" results from applying the 10% postjudgment interest to the $1,000,000 policy limit rather than the full judgment. However, USLI does not point to any statutory or Policy language to support its argument, or to any relevant case law. Salgado's request to apply postjudgment interest to the full Superior Court judgment amount is supported by the language of Conn. Gen. Stat. § 37-3b(a), which references the "amount of the judgment," and the Policy, which references "the full amount of any judgment." Accordingly, I apply postjudgment interest to the full Superior Court judgment amount of $1,582,131.35.

As noted, the parties agree that postjudgment interest runs from June 26, 2022 through the date this Court enters judgment. It has been 1,561 days since June 26, 2022. Accordingly, I award Salgado postjudgment interest of 10% per year on $1,582,131.35, i.e., a rate of $158,213.14 per year ($433.46 per day), over 1,557 days, for a total of $674,897.22.

**C. Prejudgment Interest Rate**

The parties agree that I have discretion as to whether to impose prejudgment interest and may set the rate up to 10%. Pl.'s Mot. 2; Def.'s Mem. 4. Salgado argues that I should award 10%, whereas USLI states that if I impose prejudgment interest, I should use 4%. Pl.'s Mot. 2-3; Def.'s Mem. 5-6. USLI states that prejudgment interest runs from June 6, 2022, the date of the Superior Court judgment, Def.'s Mem. 6, whereas Salgado appears to suggest that prejudgment interest run from the same date that postjudgment interest begins to run (June 26, 2022), Pl.'s Reply 6. The parties agree the end date is the date that this Court enters judgment. The parties disagree as to whether prejudgment interest applies to $1,582,131.35 or $1,000,000.

Prejudgment interest in this case is governed by Connecticut's prejudgment interest statute. *See Brandewiede v. Emery Worldwide*, 890 F. Supp. 79, 82 (D. Conn. 1994), *aff'd*, 66 F.3d 308 (2d Cir. 1995). Section 37-3a(a) of the Connecticut General Statutes provides in relevant part that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." Conn. Gen. Stat. § 37-3a(a). "The purpose of § 37-3a is . . . to compensate parties that have been deprived of the use of their money." *Sikorsky Fin. Credit Union, Inc. v. Butts*, 315 Conn. 433, 442 (2015) (citation modified). Whether a prevailing party will receive interest pursuant to § 37-3a is principally an equitable question lying within the trial court's discretion.

*See, e.g.*, *DiLieto v. Cnty. Obstetrics & Gynecology Grp., P.C.*, 310 Conn. 38, 43 (2013); *Sosin v. Sosin*, 300 Conn. 205, 227 (2011).

Salgado asserts she should be awarded prejudgment interest in the same amount as postjudgment interest, thus implying that prejudgment interest should be awarded on the total amount of the underlying Superior Court judgment, rather than on $1,000,000. However, the purpose of prejudgment interest is to compensate parties who are deprived of their use of money because it is detained after it "becomes payable." Thus, the prejudgment interest rate should apply to the amount of the Superior Court judgment that USLI is responsible for paying. Salgado provides no reasoning as to why I should apply prejudgment interest on the full amount of the Superior Court judgment if I am using $1,000,000 as the federal judgment amount (before the award of any interest). *See* Pl.'s Reply 6. As USLI is liable for $1,000,000 in this federal action before the award of any interest, the prejudgment interest calculation should be based on that amount.

Regarding the appropriate interest rate, Salgado asserts that "equitable considerations strongly support a substantial prejudgment interest award in this case" because USLI "wrongly violated its contract by refusing to defend its insured in the face of obvious ambiguities," "forced the plaintiff to engage counsel and litigate this case," and delayed compensation owed for permanent injuries for an extended period of time. Pl.'s Reply 4; Mot. 2. Salgado observes that the purpose of prejudgment interest under § 37-3a is to compensate a plaintiff for her loss of the use of compensation that should have been provided. According to Salgado, had USLI paid in 2022, Salgado could have invested the money and "[d]uring a period of historic gains in the stock market, [she] would have been able to obtain a significant return that the insurance company no doubt enjoyed." Pl,'s Reply 5. Salgado asserts that USLI "surely did not earn just

4% interest while it detained the plaintiff's funds all these years" and USLI should "not be permitted to use its unjustified delay and refusal to defend as a basis to leverage a substantial investment gain on the wrongfully withheld funds." *Id.* at 6.

USLI does not respond to Salgado's equitable argument and instead states that courts typically apply a rate less than the 10% available under Connecticut General Statutes § 37-3a. Def.'s Mem. 5 (citing *LanceSoft, Inc. v. Cowie*, No. 3:22-cv-00968 (SVN), 2024 WL 3342286, at *5 (D. Conn. Jan. 25, 2024), *report and recommendation adopted* (D. Conn. Mar. 6, 2026)). However, although *LanceSoft* noted that courts "typically apply some rate less than the 10% available," the decision recommended use of a 10% interest rate in that case, which the District Court then adopted. *See id.* USLI also relies on *Nilsen v. SJV Int'l Grp. Inc.*, No. 3:23-CV-392 (KAD), 2025 WL 2962578, at *5 (D. Conn. Oct. 20, 2025), which calculated the average monthly Federal Reserve interest rate during the relevant time period as 4.65% and ultimately used a 4% interest rate.[3] Using this analysis, USLI calculates the average Federal Reserve rate as 4.48% from June 2022 to October 2025 and urges me to use a 4% prejudgment interest rate. Def.'s Mem. 6.[4]

Had Salgado invested funds in the S&P500 in June 2022, she would have enjoyed annual returns up to this point of 19.43% (assuming dividends were reinvested, and not taking

[3] *Nilsen* observes that "[i]nterest rates have plummeted since the 1970s, when Section 37-3a was enacted." *Nilsen*, 2025 WL 2962578, at * 5.

[4] October 2025 was when USLI filed its memorandum. Def.'s Mem. 6. The average monthly interest rate for the time period between June 2022 and August 2026 (the latest available month at the time of this Opinion) was 4.32%. *See Federal Funds Effective Rate*, Fed. Reserve Bank of St. Louis, https://fred.stlouisfed.org/series/FEDFUNDS (last visited September 30, 2026).

into account taxes, fees, or transaction costs).[5] Of course, that number only comes with hindsight and the knowledge that the stock market has performed historically well over the relevant time period.

In recent years, Connecticut courts have applied a range of prejudgment interest rates. In *McCarter & Eng., LLP v. Jarrow Formulas, Inc.*, 715 F. Supp. 3d 281 (D. Conn. 2024), the Court applied a rate of 8%, stating: "I have reviewed the parties' submissions, including information on average investment yields and interest rates, and I find that a prejudgment interest rate of 8 percent is fair in this case. Interest rates and returns on investments during the period between 2019 and 2023 have been relatively high. This interest rate is within the range that other trial courts have awarded for a similar time period." *Id.* at 318; *see also Clearspan Fabric Structures Int'l, Inc. v. Buckman's, Inc.*, No. HHD-CV-20-6125284-S, 2025 WL 1874985, at *4 (Conn. Super. Ct. June 30, 2025) (awarding 10%); *Hycrete, Inc. v. 150 Glover Ave. LLC.*, No. FSTCV 18-6037861 S, 2024 WL 808547, at *26 (Conn. Super. Ct. Feb. 23, 2024) (awarding 10%); *Khan v. Khan*, No. HHD-CV-20-6127331-S, 2023 WL 4882475, at *9 (Conn. Super. Ct. July 25, 2023) (awarding 8%), *aff'd*, 234 Conn. App. 325 (2025); *Spearman v. Jhilal*, No. FBTCV-18-5036543-S, 2023 WL 4575681, at *2 (Conn. Super. Ct. July 12, 2023) (awarding 10%); *Autobuilders Gen. Contracting Servs., Inc. v. NEWS, LLC*, No. HHD-CV-18-6100213-S, 2023 WL 1794216, at *2 (Conn. Super. Ct. Jan. 31, 2023) (awarding 10%).

[5] I based this calculation upon the following website, using the start date as June 2022 and the end date as August 2026 the latest available month at the time of this Opinion), then taking the annualized nominal return with dividends reinvested. *See* S&P 500 Historical Return Calculator [With Dividends], https://ofdollarsanddata.com/sp500-calculator (last accessed September 30, 2026).

Here, I conclude that equitable considerations as well as the relatively high rates of interest and return on investments in the past four years support a prejudgment interest rate of 10%.

USLI proposes that the prejudgment interest run from June 6, 2022, Def.'s Mem. 6, while Salgado appears to suggest that prejudgment interest run from the same date as postjudgment interest (June 26, 2022), Pl.'s Reply 6. The June 26, 2022 date is used for postjudgment interest because Conn. Gen. Stat. § 37-3b provides that interest will run from the "date that is twenty days after the date of judgment." Here, as USLI appears to acknowledge, payment became due under Conn. Gen. Stat. § 37-3a when the Superior Court judgment entered on June 6, 2022. Accordingly, I award prejudgment interest running from June 6, 2022, until the day this Court enters judgment in this case.

Therefore, I award Salgado prejudgment interest at the rate of 10% on the $1,000,000 of money owed to her, i.e., a rate of $100,000 per year ($273.97 per day), over 1,577 days, for a total of $432,050.69.

**D. Offer-of-Compromise Interest**

Salgado argues that she should receive offer-of-compromise interest. Pl.'s Mot. 3-4. USLI responds that Salgado is not entitled to such interest because judgment will enter as a result of Salgaldo prevailing on her motion for summary judgment rather than obtaining a plaintiff's verdict at trial. Def.'s Mem. 6-7.

Section 52-192a(c) of the Connecticut General Statutes provides in part:

> After trial the court shall examine the record to determine whether the plaintiff made an offer of compromise which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain specified in the plaintiff's offer of compromise, the

> court shall add to the amount so recovered eight per cent annual interest on said amount.

Conn. Gen. Stat. § 52-192a(c). Salgado submitted an offer of compromise for $1,000,000.00 for the case on July 10, 2024, which USLI declined. ECF Nos. 26, 27. The statute provides in relevant part that "[t]he interest shall be computed from the date the complaint in the civil action . . . was filed with the court if the offer of compromise was filed not later than eighteen months from the filing of such complaint." Conn. Gen. Stat. § 52-192a(c). Here, Salgado filed her Complaint in Connecticut Superior Court on August 29, 2023, ECF No. 1-1, and thus the offer of compromise was filed within eighteen months of the filing of the complaint.

To support its argument that Salgado is not entitled to offer-of-compromise interest at all, USLI relies upon a Connecticut Appellate Court case stating that "the term 'after trial'" in [the statute] means "a 'final judgment' and, since the plaintiff's motion for summary judgment was for liability only, its granting by the trial court was not a final judgment." Def.'s Mem. 7 (quoting *Tureck v. George*, 44 Conn. App. 154, 162 (1997)).

In *Tureck*, the plaintiff initially filed an offer of judgment,[6] which the defendants declined to accept. Thereafter, the plaintiff moved for summary judgment as to liability only and sought a hearing in damages. The trial court granted plaintiff's motion for summary judgment as to liability. Later, when the defendants filed an offer of judgment of the same amount—and before any hearing in damages was held—the plaintiff accepted the offer and the parties agreed to a stipulated judgment. The plaintiff then sought offer-of-judgment interest directed at the plaintiff's own prior unaccepted offer. Under those circumstances, where the

[6] In *Tureck*, the court refers to an offer of compromise as an "offer of judgment," which is the term previously used in the statute.

court had granted summary judgment on liability only and not damages prior to the plaintiff accepting the defendants' offer, the Appellate Court held that the plaintiff was not entitled to offer-of-judgment interest.

Here, USLI states that it "merely briefed and argued its coverage position on summary judgment and did not prevail" and Salgado has not been "unfairly prejudiced such that USLI should be subjected to punitive damages by declining to accept her Offer of Compromise prior to the parties going to trial." Def.'s Mem. 7-8.

However, Salgado and USLI filed cross motions for summary judgment with both parties asserting that there were no facts in dispute that required a trial. The purpose of the offer-of-compromise statute is to encourage settlement prior to the conclusion of the case. *See Cardenas v. Mixcus*, 264 Conn. 314, 321 (2003) (stating that the purpose of the statute is to "encourage pretrial settlements and, consequently, to conserve judicial resources" and "the strong public policy favoring the pretrial resolution of disputes is substantially furthered by encouraging defendants to accept reasonable offers of judgment") (citation modified). USLI rejected Salgado's offer of compromise, litigated to the full extent necessary given that there were no disputed facts, and lost on the merits of the case: Salgado prevailed on her summary judgment motion, as a result of which I am entering final judgment in this case.

USLI does not argue that Salgado is not entitled to entry of final judgment in her favor in light of my summary judgment decision. Accordingly, I conclude that Salgado is entitled to offer-of-compromise interest as a result of entry of a final judgment in her favor in this case. *See, e.g.*, *Gama Aviation (Mgmt.) Inc. v. Senbahar*, No. AAN-CV21-5019874-S, 2022 WL 17592087 (Conn. Super. Ct. Dec. 5, 2022), *aff'd on other grounds*, 231 Conn. App. 483 (2025) (stating that the trial court had awarded offer-of-compromise interest after granting summary

judgment to plaintiff); *Salce v. Wolczek*, No. CV085016754S, 2011 WL 3211238 (Conn. Super. Ct. June 21, 2011) (awarding offer-of-compromise interest after granting summary judgment to plaintiff), *aff'd on other grounds*, 141 Conn. App. 528 (2013), *aff'd on other grounds*, 314 Conn. 675 (2014); *Kazlon Commc'ns, LLC v. Am. Golfer, Inc.*, 82 Conn. App. 593, 599-600 (2004) (affirming an award of interest under § 52-192a in a case resolved on summary judgment).

I therefore award Salgado offer-of-compromise interest at an 8% annual rate to run from August 29, 2023, until today, the day judgment enters, on the sum of the $1,000,000 monetary award + $674,897.22 in postjudgment interest + $432,050.69 in prejudgment interest, i.e., a total of $2,106,947.91. At a rate of $168,555.83 per year ($461.80 per day), over 1,128 days, the offer-of-compromise interest comes out to $520,910.40.

I will also exercise my discretion to award Salgado attorney's fees in the amount of $350. *See* Conn. Gen. Stat. § 52-192a(c) (stating that the "court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars").

## III. CONCLUSION

Accordingly, I grant Salgado's Motion for Judgment, ECF No. 68. I award Salgado $1,000,000, the limit of the Policy's extent of liability, in addition to $674,897.22 in postjudgment interest (at the rate of 10% per year), $432,050.69 in prejudgment interest (at the rate of 10% a year), $520,910.40 in offer-of-compromise interest (at the rate of 8% per year on the sum of underlying damages, postjudgment interest, and prejudgment interest), and $350 in attorney's fees, for a total judgment of $2,628,208.31. The Clerk of Court is respectfully directed to enter Judgment in accordance with this Order and close the case.

**SO ORDERED.**

New Haven, Connecticut
September 30, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge